## STIRNIMANN v. THE SAN DIEGO.

District Court, S. D. New York.

Feb. 28, 1944.

Hill, Rivkins & Middleton, of New York City (Thomas H. Middleton, of New York City, of counsel), for libelant.

Haight, Griffin, Deming & Gardner, of New York City (Herbert N. Statt and J. Ward O'Neill, all of New York City, of counsel), for claimant-respondent.

BRIGHT, District Judge.

Libelant seeks to recover for damages to a giant amusement crane, owned by him, and Shipped at LeHavre, France, in the steamship San Diego, owned by the claimant and respondent, on or about November 25, 1938, for use at the San Francisco Exposition on Treasure Island, and which was delivered on the pier at San Francisco on January 4 and 5, 1939. The libel has two causes of action, the first alleging that respondent, a common carrier, received the crane, consisting of 126 parts, in good order and condition, and delivered it badly damaged; and the second, that the damage

was caused by the failure of the respondent to use due care in the loading, handling, stowage and discharge of the shipment. The respondent answered, denying the allegations of the libel as to the libelant's ownership, that the crane was shipped in good condition and order, and that it was not delivered in the order and condition when shipped, and also denied any lack of care resulting in any damage to the crane. As a defense, it pleads certain portions of the bill of lading under which the crane was laden, admitting, however, that it was shipped "in apparent external good order and condition" (later this admission was deleted by amendment of the answer), and alleges that if there was any damage to the crane it arose not from its negligence but from one or more of the causes excepted in the Harter Act, 46 U.S.C.A. § 190 et seq., and the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.; and as a second partial defense, it contends that under the Carriage of Goods by Sea Act its liability, if any, is limited to $500 "per freight unit".

The testimony, with the exception of one witness sworn to before me in behalf of the libelant, was entirely taken by deposition. I do not regard the testimony of that witness as of any particular assistante in the determination of the facts. He never saw the cargo, had no personal knowledge either about the shipment, its condition at any time or the manner in which it was stowed or carried, and testified solely to conclusions from pictures shown to him.

I make the following findings of fact and conclusions of law.

1. At all of the times involved in the litigation libelant was the owner of the giant amusement crane in question, which, when delivered to the respondent at LeHavre, France, on or about November 25, 1938, consisted of 126 parts, only 20 of which were boxed, the remaining parts being entirely uncrated in any way and their condition being observable to anyone, and particularly to the officers and agents of the claimant-respondent. It is not claimed or shown that any of the parts boxed or crated were damaged. The damage claim by libelant was in all respects to those parts which were not crated and whose external condition could readily be observed.

2. At all of said times the claimant-respondent was a French corporation and engaged in business as a common carrier of merchandise by water for hire; and

owned, operated and controlled the steamship San Diego in its carriage of the crane in question.

3. The jurisdiction of this court is admitted.

4. On or about November 25, 1938, at the port of LeHavre, France, the said giant amusement crane was delivered to the respondent and shipped on board the said steamship San Diego in good order and condition, for transportation by respondent in said steamship to San Francisco, California, for delivery to the San Francisco Bay Exposition, Transportation Division, San Francisco, in accordance with the terms of a bill of lading then and there issued by respondent, and signed by its duly authorized agent; all in consideration of certain freight moneys thereupon paid to respondent for such transportation. A true photostatic copy of said bill of lading was introduced in evidence by the libelant in his Exhibit 2 in this action. Said bill of lading, among other things, admits that the said crane was delivered by the shipper to the respondent in apparent good order and condition (weight, quality, quantity, contents and value, however, being unknown by the respondent and its Captain). I think the evidence amply sustains a finding that the crane was shipped in the condition specified in the bill of lading. It was built in 1937 and then used at the Paris Exposition. After its use there, it was transported to Luna Park in Paris, and there erected and used in 1938. In the early part of November 1938, libelant caused it to be taken down and shipped by truck and railway car to LeHavre. It was then in good condition. Its condition, except insofar as its parts were packed, was visible and discernable when it was delivered to the ship. Valensi, the Second Lieutenant or Third Officer of the ship, who observed it during part of the time it was being laden on board, observed that certain of its beams, not many, were rusted but saw no pieces bent or broken. On the other hand, Juvin, who was in charge of the loading, testified by deposition that the crane had obviously been used, which it had, some parts were bent or twisted and out of form, by reason of which he made reserved notes with regard to the parts bent, twisted and rusty, and which notes he delivered to the agent of the respondent at San Francisco. He says that he was particularly careful to do this because under the French law a special classification is given to un-

packed cargo of the type in question. These notes were not produced, no exceptions were taken or marked on the bill of lading which was in all respects a "clean" bill, and if those defects were so obvious, I cannot reconcile that fact with the manner of receipt which was given. Plaintiff clearly has borne the burden of proof showing that the crane was delivered in good order and condition as acknowledged in the bill of lading. Gulden v. Hijos de Jose Taya, 2 Cir., 252 F. 577; The Dondo, D.C., 287 F. 239; Carriage of Goods by Sea Act, § 1303(2), (3) (c), 46 U.S.C.A.

■ 5. The crane was stowed in No. 2 hold of the ship. There is a conflict in the evidence adduced by respondent as to whether or not the portions of the cargo were stowed on the crane. There is also a dispute in the testimony adduced by the respondent as to the manner of stowage. Some of its witnesses testified that various portions of the crane were lashed to the pillars of the hold, others of its witnesses saying there was no lashing. Some say nothing was stowed on the crane, others say there was. Attempt was made to show that a part of the voyage was rough, but it clearly appeared that whatever weather was encountered was normal for that time of the year, so that there can be no question that whatever damage was sustained by the crane was in no way caused by perils of the sea. There is no question but that the crane was badly damaged upon arrival at the pier in San Francisco. That it was so damaged was perfectly obvious and was testified to by respondent's witnesses. And the large number of exceptions taken at the time and offered in evidence as Exhibit 3, amply demonstrates its then condition. I find that respondent has failed to sustain its burden of proof to show that the damage to the crane parts was not caused by it or comes within any of the excepted provisions of either the Harter Act or the Carriage of Goods by Sea Act. I find that the evidence is as fairly susceptible of the conclusion that damage was caused either in the loading of the crane on the ship or its stowage and subsequent handling by the respondent. The Folmina, 212 U.S. 354-361, 29 S.Ct. 363, 53 L.Ed. 546, 15 Ann. Cas. 748; Schnell v. The Vallescura, 293 U.S. 296-304, 55 S.Ct. 194, 79 L.Ed. 373.

6. The crane was not delivered by respondent at San Francisco in as good condition as when shipped and because there-of respondent failed to carry out the terms of its contract of carriage; and because thereof, libelant has been damaged.

7. The several unpacked and uncrated parts of the crane were damaged after their delivery by the libelant to the respondent and before their delivery to the pier at San Francisco. After such last mentioned delivery, a survey was made of the several bent, twisted and damaged parts and bids were then received by the libelant for the repair of the same, and the lowest bid received from the Mortensen Construction Company of $3,725 was accepted, and the work of restoring the crane to a usable condition was then undertaken and completed, and the amount of the bid was paid by libelant. It does not appear, however, what work was done and whether what was done was reasonably necessary to remedy the damage caused by respondent. It appears that specifications were prepared by Cordes for the doing of the work, but it also appears that the bidders likewise prepared specifications upon which they bid. I am unable to determine, therefore, just what damage was sustained by the libelant, and for that reason, the amount thereof is not fixed.

### Conclusions of Law.

■ 1. Libelant is entitled to recover its damages reasonably sustained by reason of the failure of the respondent to deliver the giant amusement crane in question to the libelant at San Francisco in as good order and condition as it was when delivered to the respondent at LeHavre; and for the purpose of determining the amount of that damage, a commissioner will be appointed.

■ 2. By Section 1304(5) of Title 46 of the United States Code Annotated, being a portion of the Carriage of Goods by Sea Act, it is provided that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit". The parts of the crane damaged were not in packages. It is contended that the words "freight unit" contemplated the crane as a whole and that therefore, no damages in excess of $500 can be recovered. There does not seem to be any previous decision defining the meaning of these words. In the ab-

sence of any testimony as to the rate applied to this shipment, or the manner in which the amount of the freight was arrived at, the words "freight unit", in my opinion, refer not to the entire shipment which was in 126 units or parts, but to tons or separate pieces. The contention of the respondent in this respect is, therefore, overruled, and the libelant may recover its damage, reasonably to be ascertained, but not in excess of $500 as to any separate part scheduled in the bill of lading.