## THE BILL.

### BRAZIL OITICICA, Ltd., v. THE BILL et al.

No. 2533.

District Court, D. Maryland.

June 8, 1944.

See, also, 47 F.Supp. 969.

Lord & Whip and George W. P. Whip, all of Baltimore, Md., and Bigham, Englar, Jones & Houston, Henry L. Longley, and F. Herbert Prem, all of New York City, for libelant.

Ritchie, Janney, Ober & Williams and Robert W. Williams, all of Baltimore, Md., and Hatch & Wolfe and Carver W. Wolfe, all of New York City, for respondent.

CHESNUT, District Judge.

The above case is a libel in rem to recover for a cargo loss. An opinion in the case with respect to liability was filed November 28, 1942 (47 F.Supp. 969) with the final paragraph of the opinion, page 979, reading as follows:

"The monetary damage to the libelant by the loss of the oil has not yet been established in evidence. Possibly the parties may be able to stipulate that amount without the necessity of further proof. But if there is no agreement as to the amount, counsel can at an early mutually convenient hearing submit the relevant evidence. If an interlocutory decree should be now desired, it may be submitted in due course."

After some negotiations counsel found it impossible at the time to stipulate and thereupon an interlocutory decree was passed. Since then further delay has been occasioned by the necessity of issuing a commission to Brazil to establish the amount of oil delivered to the ship. Recently (April 10, 1944) counsel have made a written stipulation as to the amount of the loss and damages subject to the determination of one question by the court which will now be stated.

It is stipulated that the sound market value of Oiticica oil at New York, the point of delivery, at the time of the short delivery of the oil, was 24.85 cents per pound and at that rate the libelant's damages for the short delivery amount to $93,250, exclusive of interest and costs. But the respondent contends that damages must be limited (exclusive of interest and costs) to $88,710, by reason of the provisions of the U. S. Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(5), which provides as follows:

"(5) Amount of liability; valuation of cargo. Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, *per customary freight unit,* or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier. (Italics supplied.)

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained."

It is not disputed that the carriage in this case was subject to that Act. Nor was there any specific valuation of the goods inserted in the bill of lading which recited the receipt of "385,000 kilos of Oiticica oil in bulk" and which also specified that the freight charges on delivery were to be at the rate of $22 per 1,000 kilos. The printed condition 8 of the bill of lading did, however, provide as follows: "8. Also, that in event of claims for short delivery when the Ship reaches her destination, price shall be the market price at the port of destination on the day of the Ship's entry at the Custom House, less all charges of sale."

The oil was shipped in bulk and not in drums or other packages, and was contained in about equal quantities in the two deep tanks of the ship and practically filled both of them. All this is fully described in the original opinion in the case.

It is agreed that a kilo is equivalent to 2.20 pounds and 1,000 kilos constitutes a metric ton. At the market delivery price of 24.85 cents per pound the value of 1,000 kilos of oil was $546.70, thus exceeding the limitation in the Act of $500 per "customary freight unit", if that phrase of the Act is applicable, as the respondent contends is the case here. It is further said that ordinarily the market price of this oil would have been less than $500 per 1,000 kilos except for the present war conditions.

The novel point now presented is the proper meaning and application of the

phrase "per customary freight unit". Is it applicable to the conditions here presented? And if so, then what was the "customary freight unit" in this case. Counsel are agreed that there is no prior judicial precedent construing and applying this phrase "per customary freight unit".[1]

The history of the U. S. Carriage of Goods by Sea Act of 1936 is a very interesting one in the field of admiralty law. It was finally passed by Congress to promote uniformity in ocean bills of lading. For many years prior thereto efforts had been made in this and other countries to achieve such uniformity. The history of this can be found in Knauth on Ocean Bills of Lading, (1937) 99–110. In 1924 certain rules (the Hague rules) were adopted by an international convention for the unification of certain rules relating to "Ocean Bills of Lading". In them (Art. 4,s.5) the parallel limitation of liability clause read: "In an amount exceeding 100 pounds sterling *per package or unit."* These Hague rules have subsequently been adopted in a number of other countries including Great Britain (1925) and the United States (1936). The phraseology of the British statute followed the Hague rules with respect to the wording of the limitation clause. But it will be noted that in the United States Act the phrase "per unit" has been expanded or changed to read "per customary freight unit". There was considerable delay (1923–1936) before this country passed its Act. In the intervening years several successive Bills were introduced in which the phraseology of the limitation clause at times read "$100 per package or unit"; "$500 per package or unit"; "$500 per package or, in case of goods not shipped in packages, per customary freight unit". Various hearings were held on these several Bills over this period of years. During these hearings,

or some of them, other varying phraseology was suggested from time to time by interested parties including among other phrases "per declared freight unit". The final Bill which was subsequently passed was introduced on January 17, 1935 in the Senate (S.1152) containing the phraseology "$500 per package, lawful money of the United States, or in case of goods not shipped in packages, *per customary freight unit".* (Italics supplied.) There appear to be no committee reports which clearly explain the quoted phrase "per customary freight unit"; but it seems reasonably clear that the phraseology finally adopted was intended to be more definite than the shorter phrase "per unit" contained in the Hague rules.

The first question that naturally occurs is whether the phrase is applicable at all to large quantities of oil shipped in bulk in deep tanks of a ship. Here again there seems to be no judicial precedent either in this or other countries on the point; but there is some discussion of the subject by Temperley & Vaughan in their well-known text book on the British Act—Carriage of Goods by Sea Act, 1924 (London 1932, 4th Ed., pp. 81, 82). The authors there reject the suggestion that the phrase "package or unit" would be applicable to the whole of such bulk cargo. They add the comment "This supports the view that the whole clause was primarily aimed at preventing excessive claims in respect of small packages of great value." However, it is unnecessary to pursue this point further because in this case counsel for both parties are in agreement that the phrase "per customary freight unit" is applicable in the present case, although they differ as to how it should be practically applied.

The next question that occurs, and it is the controlling one here, is whether the word "freight" in this context means money

[1] In Stirnimann v. S. S. San Diego, D. C.S.D.N.Y., 55 F.Supp. 798, a giant crane was shipped under a single bill of lading in 126 parts, of which 20 were boxed and 106 were unboxed. Many pieces became bent and the repair cost $3,725. The respondent relied upon this limitation clause, and District Judge Bright said: "The parts of the crane damaged were not in packages. It is contended that the words 'freight unit' contemplated the crane as a whole and that therefore, no damages in excess of $500 can be recovered. There does not seem to be any previous decision defining the meaning of these words. In the absence of any testimony as to the rate applied to this shipment, or the manner in which the amount of the freight was arrived at, the words 'freight unit', in my opinion, refer not to the entire shipment which was in 126 units or parts, but to tons or separate pieces. The contention of the respondent in this respect is, therefore, overruled, and the libelant may recover its damage, reasonably to be ascertained, but not in excess of $500 as to any separate part scheduled in the bill of lading."

or consideration to be paid to the carrier for the transportation of the commodity, or does it refer to the commodity itself. The respondent contends for the former meaning and the libelant for the latter. This latter contention would give to the phrase "freight unit" the meaning of "freighting unit" or "shipping unit". And in this case the libelant contends that the "shipping unit" was one kilogram (worth about 50 cents) and not 1,000 kilograms as stated in the bill of lading in the calculation of the freight rate. In other words, the libelant says that customary "freight unit" does not mean the "rate of freight" to be charged.

■ Upon consideration of this hitherto unadjudicated point, I conclude that the phrase "per customary freight unit" in this context in the light of its legislative history, refers to the unit of quantity, weight or measurement of the cargo customarily used as the basis for the calculation of the freight rate to be charged. Generally, in marine contracts the word "freight" is used to denote remuneration or reward for carriage of goods by ship, rather than the goods themselves. Benedict on Admiralty, Vol. I, 6th Ed., § 92, p. 284; Carver on Carriage of Goods by Sea, 8th Ed., § 543, p. 755; Richards on Insurance, 4th Ed., § 424, p. 765. Furthermore, in this case the respondent has submitted the deposition evidence given by a competent witness experienced in the trade who used the phrase "freight rate" and "freight unit" synonymously. The witness also stated in effect that 1,000 kilos of oil did constitute the "customary freight unit". This evidence was uncontradicted.[2]

In support of his contention that one kilogram rather than 1,000 kilograms of oil should be regarded as the freight unit in this case, counsel for the libelant refers to a small refund in the amount of freight paid finally made by the respondent after the ascertainment of the precise quantity of oil delivered in New York. This adjustment he contends was made in the freight rate whereby, as he contends, the actual freight was proportioned to the number of kilograms delivered. But this contention does not seem sound or reasonable to me in view of the precise recital in the bill of lading that the "rate" of freight charged was at $22 per 1,000 kilos.

■ The libelant further contends that section 8 of the bill of lading heretofore quoted overrides the limitation of the liability clause in this case. But I reach the contrary conclusion. Section 1304(5) of the Act makes the limitation of liability in amount effective "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." In this case there was no insertion in the bill of lading of any specific valuation of the oil. Clause 8 of the bill of lading does not set up any valuation for the oil but merely states the basis for the determination of the value of the oil in the event of short deliveries on the usual and customary basis for measure of damages in the absence of a different controlling provision. It was so held in the quite similar case by District Judge Conger in the Southern District of New York in Shackman v. Cunard White Star, 31 F. Supp. 948, following on this point a decision by the Second Circuit presenting nearly the same contractual contention. Stevens v. Cunard SS. Co., Ltd., 271 F. 306. I take a similar view. See Lowendahl v. Norwegian S. & T. M., Sup., 32 N.Y.S.2d 744, 746. Clause 8 is a valuation clause rather than a limitation clause, and does not override the requirements of the limitation clause in the Act. See also The Ansaldo San Giorgio I, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016; The Ferncliff, D.C.Md., 22 F.Supp. 728, 742, affirmed Smith v. The Ferncliff, 306 U.S. 444, 59 S.Ct. 615, 83 L.Ed. 862; The Steel Inventor, D.C.Md., 35 F.Supp. 986, 998.

■ Counsel for the libelant further contends that the Shackman case, supra, ought not to be followed in this case because the opinion in the former does not expressly consider the effect of that clause in section 1304(5) of the Act reading as follows: "By agreement between the carrier, master, or agent of the carrier, and

---

[2] In this connection it may be of interest to note the wording of the Uniform North Atlantic Bill of Lading Clause, 1937. The 17th Art. (see Knauth, supra, p. 86) deals with the limitation of liability and reads in part: "In case of any loss or damage to or in connection with goods exceeding in actual value $500 lawful money of the United States per package, or, in case of goods not shipped in packages, the customary freight unit, the value of the goods shall be deemed to be $500 per package or per unit, *on which basis the freight is adjusted*", etc. (Italics supplied.)

the shipper, another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named." The contention is that Art. 8 of the bill of lading is authorized by this provision of section 1304(5) and constitutes "another maximum amount than that mentioned" in the Act. But I think this contention is also untenable. Neither the particular wording nor the situation of Art. 8 of the bill of lading in the whole context, furnishes any reasonable basis for the view that it was intended to override the limitation clause or to express "another maximum amount" than that contained in the limitation clause.

My conclusion, therefore, is that the libelant's recoverable damages in this case must be limited to the principal sum of $88,710. But I also conclude that the libelant is entitled to interest at the usual rate of 6% on this amount from the time of delivery of the oil in New York, and also to taxable court costs. Counsel may submit the appropriate form of decree in due course.