**GULF ITALIA COMPANY, Libellant,**

v.

**THE Steamship EXIRIA, her engines, etc., and American Export Lines, Inc., Respondent.**

United States District Court
S. D. New York.
Jan. 13, 1958.

Burlingham, Hupper & Kennedy, New York City, for libellant. Herbert M. Lord, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondent. Kenneth Gardner, M. E. DeOrchis, New York City, of counsel.

CASHIN, District Judge.

In this action for cargo damage, the parties have stipulated the following facts essential to a decision, which are therefore found as facts:

Libellant was the owner of a tractor which was shipped under a clean bill of lading upon the S.S. Exiria owned by respondent, American Export Lines, Inc., from the Port of New York to Palermo, Italy, on or about August 18, 1954. The tractor was re-delivered in a damaged condition. Respondent is responsible for the damage to the tractor. The tractor was prepared for shipment by putting waterproof papering about some of the more vital parts of the superstructure and by partially encasing the superstructure with wooden planking. The tread portion of the tractor was not prepared for shipment in any way, nor was the tractor attached to a skid. Exhibits 4, 5, 6 and 7, attached to the stipulated facts, demonstrate photographically the precise manner in which the tractor was prepared for shipment. Freight was charged on the basis of measurement tons, the tractor being 34.6 measurement tons.

Under the facts, as stipulated and found by the Court, only one basic issue is presented, namely, is the tractor which is the subject matter of this lawsuit, as prepared for shipment, to be deemed a "package" under the Carriage of Goods by Sea Act.[1]

The respondent admits liability but claims that its liability is limited to $500 under Section 4(5) of the Carriage of Goods by Sea Act (Title 46 U.S.C.A. § 1304(5)), the relevant terms of which are set down in the margin.[2] Libellant contends, on the other hand, that although the liability of the respondent is to be limited under Section 4(5) of the Carriage of Goods by Sea Act, the measure of the limitation of liability is $500 per customary freight unit.

Respondent places great stress upon the fact that both parties, or those with power to bind them, are members of the "North Atlantic Mediterranean Freight Conference" and bound by its terms. Libellant does not dispute the fact that the parties are members of the Conference but argues that the terms of the Conference do not act to limit the liability of the respondent herein.

Section 8 of North Atlantic Mediterranean Freight Tariff No. 3 is relied upon by respondent. The terms thereof are set out in the margin.[3] I do not

---

1. Title 46 U.S.C.A. § 1300 et seq.

2. "(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *"

3. "8. Choice of Rates:
   "This tariff offers Shipper a choice of freight rates dependent upon whether the shipment is made subject to Bill of Lading limit of value, or at a higher limit of value and in some cases at a specified lower limit of value.
   "(a) The rates shown in this tariff or in contracts herein provided, except where predicated on specifically lower values, or on an Ad Valorem basis, are subject to Bill of Lading limit of value.
   "(b) If the Shipper elects to ship at a value in excess of Bill of Lading limit of value he shall, in writing, declare the value before shipment and the rate applicable, unless already shown as Ad Valorem, is the tariff rate plus following Ad Valorems, on the value declared in excess of said Bill of Lading limit of value.

   | "Base | Ports | 6 % |
   | "Arbitrary | Ports | 8½% |

   Minimum charge on shipments so rated shall be $12.00 per package.

deem it necessary to interpret the meaning of Section 8 of the North Atlantic Mediterranean Freight Tariff No. 3. Nor do I deem it necessary to attempt to draw inferences from other evidence submitted concerning the characterization by the parties of the tractor, as shipped, as a package. Suffice it to say that Section 3(8) of the Carriage of Goods by Sea Act (Title 46 U.S.C.A. § 1303(8)), printed in the margin[4] has the legal effect of outlawing any limitation of liability for negligence except as set forth in Section 4(3) of the Act.[5] While the Pan-Am Trade & Credit Corp. case, cited in footnote 5, considers a pro-rata limitation of liability included in the bill of lading, in addition to the statutory limitation,[6] the holding in that case is clear that any attempt to lessen the carrier's liability, other than by the terms of the Act, is invalid. To allow the parties themselves to define what a "package" is would allow a lessening of liability other than by the terms of the Act since a carrier could always limit its liability to $500 by merely extracting a stipulation from the shipper that everything shipped, in no matter what form, would be deemed for the purposes of limitation of liability a "package". Since the conceded liability of respondent is predicated upon presumed negligence, the only issue before the Court is the one stated above, that is, whether the tractor in issue, as prepared for shipment, is to be considered a "package", not as defined by the parties, but rather within the meaning of the Carriage of Goods by Sea Act.

In determining this vital issue a comparative dearth of authority is encountered. While cases can be found where the goods obviously cannot be considered a "package", such as goods shipped in bulk[7] or goods which have not been prepared for shipment in any way,[8] relatively few cases are reported where the damaged goods for which recovery is sought

"(c) Where rates are based on specific limitation of value (lower than Bill of Lading limit of value) the following clause must be placed on contracts and Bills of Lading:

"'The value of the property is hereby specifically stated by the Shipper to be not in excess of ——— per ——— and the freight rate is predicated on this basis.'

"(d) If the valuation in excess of Bill of Lading limit of value is not declared by the Shipper, in writing, before shipment as a basis for freight, such non-declaration shall constitute an election by the Shipper to ship on the basis of said Bill of Lading limit of value and any liability of the Ship Owner shall be computed on the basis of said limit of value in the manner provided in the Bill of Lading."

4. "(8) Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter [or section 25 of Title 49], shall be null and void and of no effect. * * *".

5. Pan-Am Trade & Credit Corp. v. The Campfire, 2 Cir., 1946, 156 F.2d 603, cer-tiorari denied 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666, sub. nom. Waterman Steamship Corp. v. Pan-American Trade & Credit Corp., 1946. Contra: Eyles v. United Fruit Co., D.C.S.D.N.Y.1942, 1942 A.M.C. 1470, and The Margaret Lykes, D.C.E.D.La.1944, 57 F.Supp. 466. But see Middle East Agency v. The John B. Waterman, D.C.S.D.N.Y.1949, 86 F.Supp. 487.

6. The terms of the bill attempted to limit the liability of the carrier further than the limitation provided in the Carriage of Goods by Sea Act in that the conceded package limitation of $500 would be further lessened in the event the goods were not a total loss. Thus, in any single package, if the goods, no matter what their value, were only 50% damaged, only $250 could be recovered. A similar lessening of liability would be applicable in case the limitation of liability was by customary freight unit rather than by package. Even though Paragraph 17 of the Bill of Lading utilized in the instant case contains the same provision as that in the Pan-Am Trade & Credit Corp. case, the pro-rata lessening of liability is not urged by the respondent.

7. The Bill, D.C.Md.1944, 55 F.Supp. 780.

8. Petition of Isbrandtsen Company, 2 Cir., 1953, 201 F.2d 281.

were to some extent prepared for shipment but were not fully enclosed so as to be considered a "package" in the ordinary layman's sense of the term.

The only reported case which on its facts resembles the instant case is that of Middle East Agency v. The John B. Waterman, supra, footnote 5. In that case eleven tractors which were not prepared for shipment in any way were held not to be "packages", while parts of a rock crusher, which were prepared for shipment only by being secured to skids, were held to be "packages". Limitation of liability for damage to the tractors was, therefore, measured by $500 per customary freight unit, while limitation of liability for damage to the parts of the rock crusher was measured by $500 per package, in that case each individual part of the rock crusher.

In the instant case, the preparation for shipment differed from the preparation utilized on the part of the rock crusher in the Middle East Agency case, in that here most of the superstructure of the tractor was enclosed, while the treads were completely uncrated and the tractor was not attached to a skid. The distinguishing feature between the Middle East Agency case and the instant case is that utilization of the skid facilitated the handling of the item shipped while the packaging of the tractor was only for protective purposes. However, I do not deem it necessary to rest my conclusion merely on this distinguishing factor since the differences in the items themselves and the differences in the methods of their preparation for shipment are great enough of themselves to warrant an independent determination of whether the tractor, as prepared for shipment, is a "package".

■ While it has been said that the purpose of the package limitation is to protect carriers from exorbitant claims on items whose value is not discoverable because their precise nature is hidden by the package,[9] it does not follow that merely because the value is discoverable the package limitation cannot apply. It can hardly be doubted that such limitation would be considered applicable to bales of cotton and the like and, in fact, in the Middle East Agency v. The John B. Waterman, supra, footnote 5, the limitation was applied to parts of a rock crusher which were completely exposed. However, in a close case, such as the instant one, such a purpose should be taken into consideration.

■ Here, the item damaged would not be considered a "package" under any ordinary construction of the term. A large tractor, weighing 43,319 pounds, is not within the purview of the layman's view of a "package". The respondent herein certainly was well aware of the nature and value of the tractor. Under these circumstances I cannot believe that Congress intended the carrier to be able to limit its liability for its own negligence to a pittance of only $500.

At first blush the dictionary definitions of "package" would seem to support respondent's contention. Thus, for example, Black's Law Dictionary defines "package" as follows:

> "Package. A bundle put up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery, from hand to hand. A parcel is a small package; 'parcel' being the diminutive of "Package". Each of the words denotes a thing in form suitable for transportation or handling or sale from hand to hand. As ordinarily understood in the commercial world, it means a shipping package."

■ However, I do not believe that the mere fact that an item is in some way prepared for shipment will thereby effect the result of making that item, as so prepared, a package within the meaning of the Carriage of Goods by Sea Act.

9. Whaite v. The Lancashire and Yorkshire Railway Company, L.R. 9 Ex. 467 (1875) construing similar limitation of liability provision in favor of rail carriers. Cf. Stirnimann v. The San Diego, 2 Cir., 1945, 148 F.2d 141.

To adopt such a construction it would have to be said that a shipper who attempts to minimize possible harm to his property by putting protective covering on sensitive parts, would be in a worse position than a shipper who cavalierly makes no effort to reduce the possibility of loss not only to himself but to the carrier. Such result would hardly foster good commercial practices.

While I am aware of the fact that there is a strong public policy to encourage American Merchant Marine activities by subsidies and by various forms of limitation of liability [10] a limitation of the kind urged by respondent appears too great a hardship on shippers and thus not intended by Congress. The liability of the carrier is, of course, limited to $500 per customary freight unit, that is the basis upon which the freight was charged.[11] Thus, the liability of the respondent is limited to $17,300. (34.6 M/T x $500).

An interlocutory decree should be entered referring the issue of computation of damages to a Master.

Settle Decree.

10. See concurring Opinion of Judge Clark in Petition of Isbrandtsen Company, supra, 201 F.2d at page 287.

11. Petition of Isbrandtsen Company, supra.