**GULF ITALIA COMPANY, Libellant-Appellee,**

v.

**AMERICAN EXPORT LINES, INC., Respondent-Appellant.**

No. 29, Docket 25066.

United States Court of Appeals Second Circuit.

Argued Oct. 21, 1958.

Decided Jan. 28, 1959.

136

Haight, Gardner, Poor & Havens, New York City, Proctors for Appellant. Kenneth Gardner and M. E. De Orchis, New York City, of counsel.

Burlingham, Hupper & Kennedy, New York City, Proctors for Appellee. Eugene Underwood and Herbert M. Lord, New York City, of counsel.

Before SWAN and MOORE, Circuit Judges, and IRVING R. KAUFMAN, District Judge.

SWAN, Circuit Judge.

The libellant filed a libel in admiralty against American Export Lines, Inc., to recover for damage to a caterpillar tractor which was carried on respondent's steamship Exiria from New York to Palermo in August 1954. The tractor was damaged while being unloaded. Respondent conceded responsibility, but maintained that its liability is limited by the $500. limit-of-value provision in § 1304(5), and a similar provision in the bill of lading.[1] The tractor was prepared for shipment by putting waterproof papering over some of its parts and by partially encasing the super-structure with wooden planking. The tread portions of the tractor were uncovered and the tractor was not attached to a skid. The tractor was described in the bill of lading as "semi-boxed." Judge Cashin held that the tractor was not a "package" and that the limitation on liability must be computed on the basis of "customary freight unit." There were 34.6 such units; consequently respondent's liability was limited to $17,300., and the issue as to com-

1. 46 U.S.C.A. § 1304(5) provides: "(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

putation of damages was referred to a master. Judge Cashin's opinion is reported, D.C., 160 F.Supp. 956. Respondent has appealed.

■■ Section 4(5) of the Act divides "the transportation of goods" into two categories: "packages" and "goods not shipped in packages." Plainly the tractor was not shipped *in* a package, unless the covering of certain portions of it make it a "package" within the meaning of the Act. Apparently the appellant contends that any preparation of goods for ocean transportation converts the goods into a "package." Such a construction of the section would cause "a shipper who attempts to minimize possible harm to his property by putting protective covering on sensitive parts," to be placed in a worse position than a shipper who makes no effort to reduce the possibility of loss from inclement weather or pilfering. We agree with Judge Cashin that "such result would hardly foster good commercial practices."[2] Any test dependent upon extent of external covering would lead to uncertainty and increase litigation. We cannot believe that Congress intended "package" to be defined in a way to produce such a result. The District Court was correct in holding that the tractor was not a "package."

■ With respect to the words "customary freight unit" appellant argues that "unit" refers to shipping unit not freighting unit. Such construction is foreclosed by Petition of Isbrandtsen Company, Inc., 2 Cir., 201 F.2d 281, 286:

"The authorities have construed the words 'customary freight unit' to refer to the unit upon which the charge for freight is computed and not to the shipping unit."

See also Stirnimann v. The San Diego, 2 Cir., 148 F.2d 141, 143; Waterman S. S. Corp. v. U. S. Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, certiorari denied 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656; The Bill, D.C.Md., 55 F. Supp. 780, 783. Cf. Studebaker Distributors, Ltd. v. Charlton S. S. Co. Ltd. [1938], 1 K.B. 459.

Decree affirmed.

MOORE, Circuit Judge (dissenting).

I cannot agree that the tractor in question does not come within the definitions of "package" or "customary freight unit" as applied in the shipping world. The tractor as described in the majority opinion and as clearly shown in the photographs (Exhibits 4, 5, 6, 7 and A) was about as carefully packaged as a tractor with protruding treads could be. The bill of lading listed the tractor under the headings "No. of Pkgs. Description of Packages and Goods." Although such titles are not controlling, they are not to be completely disregarded. Under these titles the tractor was listed as "1 Semi Boxed" and at the bottom appears the total of "6 Packages" (Exh. B). At the bottom of the bill the items of freight to be paid were computed, some on a 100-pound basis, some on a 2240-pound basis and some on a 40 cubic feet basis. Despite the fact that both shippers and carriers have had many years in which to clarify the meaning of "package" and "customary freight unit" apparently little has been done in this field. There is a surprising dearth of decided cases on the subject. The few cases cited by appellant and appellee are either dissimilar as to the facts or are conflicting.

The trial court was obviously influenced (and understandably so) by the fact that a "package" to the average person would not include a large tractor, saying "A large tractor, weighing 43,319 pounds, is not within the purview of the layman's view of a 'package.'" However, a layman's definition of a package should not be determinative here. The fact that the shipping industry does not so regard a package is well illustrated by appellee's concession on argument that a large automobile completely enclosed in a packing case would be a "package." A casual inspection of the average pier shows hundreds of "packages" of great size and weight which would be in

2. 160 F.Supp. 956, at page 960.

the same category. Obviously weight, size or value should not control. Had a few additional pieces of lumber been placed around the tractor treads a package would concededly have resulted, but this would have been a needless act because the treads themselves did not require protection. It would indeed be an anomalous situation if a shipper who had completely enclosed a tractor were limited to damages of $500 whereas another shipper could recover on a weight or size basis merely because he had allowed some indestructible part to protrude from the package.

As to the law this court in Petition of Isbrandtsen Company, 2 Cir., 1953, 201 F.2d 281, said that under the Act liability was limited to $500 per customary freight unit, which unit was held to be that unit of measure by which the freight charges were calculated. However, that case involved a "customary freight unit" consisting of a locomotive and tender. It happened there that the shipping unit and the unit for computing the freight charge were the same, namely, the locomotive and tender. The carrier's liability was limited to $500 per locomotive and tender. The doctrine of freight unit being the same as the unit by which freight charges are computed apparently originated in The Bill, D.C., Md., 1944, 47 F. Supp. 969, 55 F.Supp. 780, affirmed per curiam 4 Cir., 1944, 145 F.2d 470. In that case the cargo was oil shipped in bulk. Some unit of liability had to be found so the court concluded that "customary freight unit" should be that unit "customarily used as the basis for the calculation of the freight rate to be charged." Thereafter, however, in Stirnimann v. The San Diego, 2 Cir., 1945, 148 F.2d 141, affirming S.D. N.Y.1944, 55 F.Supp. 798, this court affirmed the trial court's holding that each of the 126 pieces in which a giant amusement crane had been shipped was a separate package or freight unit for which liability was limited to $500 each. This court rejected the carrier's argument that since freight for the entire crane was charged in one lump sum it was only one customary freight unit under the rule of The Bill, supra. It was noted in this court's opinion that each piece of the crane had been carefully weighed and measured, and was described in a schedule attached to the bill of lading. This decision would seem to support appellant in the present case, where the single tractor may be a customary freight unit, as were each of the 126 pieces of the giant crane in Stirnimann.

Waterman S. S. Corp. v. United States S. R. & M. Co., 5 Cir., 1946, 155 F.2d 687 was cited in Petition of Isbrandtsen Company, supra, to support this court's definition of "customary freight unit." Like The Bill, however, it is distinguishable from the present case in that the cargo, 698 pieces of structural steel, was shipped in bulk. Thirteen pieces were lost overboard and the court did not regard each as a customary freight unit. Since the freight was charged at 64¢ per 100 pounds that unit of measure was held to be the customary freight unit.

Middle East Agency v. The John B. Waterman, D.C.S.D.N.Y., 1949, 86 F. Supp. 487, is the case most directly supporting appellee. The cargo consisted of eleven uncrated tractors and a rock crusher which was shipped "knocked down" in 21 items. Five of the items were pieces of machinery not packaged but merely on skids. The court held them to be packages for purposes of limitation. As to an uncrated and uncased piece of machinery not on skids and the eleven uncrated tractors the court allowed a limitation of $500 per measurement ton (40 cubic feet), rejecting the respondent's argument that each tractor and piece of machinery was a customary freight unit. To hold a piece of machinery a package simply because it has skids attached and to limit liability for damage to $500, where the same machinery without skids, if large or heavy, would subject the carrier to a much greater liability for loss, seems unreasonably to extend the meaning of "package" and to bring about a result that is highly inequitable. Nor is there any reason for not regarding a tractor as a "customary freight unit."

The trial court could not "believe that Congress intended the carrier to be able to limit its liability for its own negligence to a pittance of only $500.00." However, had appellee wished to obtain protection on an *ad valorem* basis it could have done so. Under the Act this choice is open to shippers although the *ad valorem* rates are higher.