**ALUMINIOS POZUELO LTD., Plaintiff,**

v.

**SS NAVIGATOR, her engines, boilers, etc., and CIA MAR. Unidad S.A. and Marina Mercante Nicaraguense, S.A., Defendants.**

**No. 64 Ad. 145.**

United States District Court
S. D. New York.

Dec. 15, 1967.

Hill, Rivkins, Warburton, McGowan & Carey, New York City, for plaintiff; Martin B. Mulroy, New York City, Advocate.

Burlingham, Underwood, Barron, Wright & White, New York City, for defendant Cia Mar. Unidad S.A.; John S. Rogers, New York City, of counsel.

Cichanowicz & Callan, New York City, for defendant Marina Mercante Nicaraguense, S.A.; Michael J. Ryan, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiff, the consignee-owner of a 6200 pound toggle press (the press), brings an action in admiralty for damages to the press against defendants, the owner of the SS NAVIGATOR (the vessel), on which the press was shipped and damaged, and the time charterer of the vessel. Plaintiff moves for summary judgment, pursuant to Rule 56, F.R.Civ. P., for the full amount of the damage. Defendants contend that plaintiff's damages are limited to $500.

It appears from the stipulation of the facts that on February 21, 1963, in New York, the defendant time charterer of the vessel issued a clean, negotiable bill of lading to the Pan Coast International Corporation, the shipper, attesting to receipt by the vessel of one skid of machinery in apparent good order and condition and weighing 6200 pounds. The machinery on the skid was the press, which measured 55 inches by 46 inches at its base and 98 inches by 67 inches at its top. The freight charge for the press was $510.15, and was computed at a rate of $38 per 40 cubic feet for 537 cubic feet. The press was prepared for shipment by bolting its base to a skid, consisting of two parallel pieces of timber, 130 inches in length, crossed by and bolted to three other timbers, 96 inches in length. The skid thus measured 130 inches by 96 inches, or approximately twice the size of the base and one and one-half times the size of the top of the press. On delivery by the defendants, the press had sustained damage in an amount in excess of $500.

The legal issues are whether the press, bolted to the skid, is a "package" within the meaning of section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.A. § 1304(5), or, if it is not a package, whether the "customary freight unit" in section 4(5) of COGSA is the entire press or a smaller portion thereof. Section 4(5) of COGSA provides that

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package * * * or in case of goods not shipped in packages, per customary freight unit * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

Defendants contend that the press is a "package" and that Middle East Agency v. The John B. Waterman, 86 F.Supp. 487 (S.D.N.Y.1949), controls. Defendants also rely on the recent case of Standard Electrica, S. A. v. Hamburg Sudamerikanische, 262 F.Supp. 343 (S.D.N.Y.1966), aff'd, 375 F.2d 943 (2d Cir. 1967). Plaintiff argues that the holding in *Middle East Agency* has been modified substantially, if not overruled, by Gulf Italia Co. v. The Exiria, 160 F.Supp. 956 (S.D.N.Y.1958), aff'd, 263 F.2d 135 (2d Cir.), cert. denied, 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959), and Pannell v. The SS American Flyer, 263 F.2d 497 (2d Cir.), cert. denied, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959).

In *Middle East Agency*, a rock crusher was disassembled into 21 pieces for shipment. Five of the large pieces of machinery were shipped on skids. Judge Leibell held that each skidded piece of machinery was a package.

In *Gulf Italia*, a caterpillar tractor was shipped with its superstructure partially crated and covered with waterproofing paper. The tractor treads were exposed and the tractor was not on a skid. Judge Cashin held that the tractor was not a "package." He distinguished *Middle East Agency* by observing that the skid had been used to facilitate the handling of the item shipped, while the crating and paper had been used only to protect the tractor (160 F.Supp. at 959). Judge Cashin noted that the definition in Black's Law Dictionary of "package" as a "bundle put up for transportation" supported the argument that the tractor was a package because the tractor had been partially crated and wrapped. However, Judge Cashin concluded that a construction of the term "package" which would

put a shipper who put protective covering on the item being shipped in a worse position than a shipper "who cavalierly makes no effort to reduce the possibility of loss * * * would hardly foster good commercial practices," (160 F.Supp. at 960).

In affirming Judge Cashin's decision, the Court of Appeals noted that "any test [of the meaning of the term 'package'] dependent upon extent of external covering would lead to uncertainty and increase litigation," (263 F.2d at 137).

In *Pannell,* a yacht was shipped on the deck of a vessel. It rested upon and was lashed to a cradle. The Court of Appeals held that COGSA did not apply, but if it had, the yacht was like the tractor in *Gulf Italia* and was not a package.

In *Standard Electrica,* Judge McLean found that a pallet with six cartons strapped on it was one package and not six. Judge McLean considered the definition of "package" in Black's Law Dictionary and the bill of lading and shipper's invoice, which referred to nine such pallets as nine packages. He concluded that the pallet "constituted an integrated unit, capable of, and intended for, handling as such," (262 F.Supp. at 345). In addition, Judge McLean commented that he "doubt[ed] whether it can be said * * [that *Middle East Agency*] was overruled by *Gulf Italia* and *Pannell,*" (262 F.Supp. at 346).

In affirming Judge McLean's decision, the Court of Appeals stated that "the characterizations of the parties themselves * * * are entitled to considerable weight * * *. Each pallet had the physical characteristics of a package and was clearly a 'bundle put up for transportation.' Black, Law Dictionary * *." In addition, the Court noted that the "shipper, at his option, can obtain full coverage simply by declaring the nature and value of the goods in the bill of lading," (375 F.2d at 946).

■ I find that the press on a skid is a "package" within the meaning of section 4(5) of COGSA. The skid made possible the handling and transporting of the press; thus, as an article "put up * * in a form suitable for transportation or handling," the press and the skid constituted a "package." It is possible that, in another case, a skid might be used to protect an item being shipped, see Middle East Agency, 86 F.Supp. at 490, rather than to facilitate the handling and transporting of the item. In this case, however, the skid was used for the latter purpose, and not the former. Neither the crating in *Gulf Italia* nor the cradle in *Pannell* in any way facilitated handling or transporting. In *Gulf Italia,* the tractor treads were exposed and the crating and waterproofing paper were used solely for protective purposes. In *Pannell,* the yacht was hoisted on board and placed in and lashed to a cradle. When the yacht was unloaded, it was lifted out of the cradle. It appears that the cradle was used solely to hold the yacht while it was on board the vessel.

The Court of Appeals in *Standard Electrica* noted the "confusion" in section 4(5) of COGSA and stated that there was a need to give the term " 'package' * * a more predictable meaning * * * [in order that] the parties concerned [will] know when there is a need to place the risk of additional loss on one or the other accordingly or adequately to insure against it," (375 F.2d at 947).

If plaintiff had wanted to avoid the $500 per package limitation of liability in the bill of lading, it could have declared a higher value and paid extra freight. See Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F. Supp. 76 (S.D.N.Y. Sept. 25, 1967), aff'd, 2 Cir., 386 F.2d 830 (1967).

Plaintiff contends, however, that the press consisted of 13.4 customary freight units and that the coverage under section 4(5) of COGSA at the rate of $500 per customary freight unit was adequate without a declaration of value. On this basis, the defendant carrier would be liable for the full value of the press.

■ In India Supply Mission v. S. S. Overseas Joyce, 246 F.Supp. 536, 539 (S.D.N.Y.1965), Judge Tyler was faced

with a similar contention which would have made the carrier liable for up to $600,000 on a shipment of six locomotives for which the freight charges were only $42,000. Judge Tyler held that each locomotive was only one customary freight unit and stated that the shipper's contention that each locomotive consisted of more than one customary freight unit must be rejected because of the "policy considerations underpinning the COGSA limitation of liability provisions * * * [which were] intended to limit the liability of *common carriers* * * * unless the shipper declared a higher value on the goods and paid a higher rate." Plaintiff's contention here must be rejected for the same reason.

Since the press on the skid was a "package" within the meaning of section 4(5) of COGSA, the plaintiff is limited in his recovery to $500. Plaintiff's motion for summary judgment is granted to this extent.

Settle order on notice.