ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Plaintiff,

v.

SEA–LAND SERVICE, INC., Defendant.

No. 89 Civ. 5444 (RPP).

United States District Court,
S.D. New York.

April 24, 1990.

Badiak, Will & Maloof, New York City by Alfred J. Will, for plaintiff.

DeOrchis & Partners, New York City by M.E. DeOrchis, for defendant.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This case raises the recurring question of what is a "package" for purposes of § 4(5) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.A.App. § 1304(5), which limits the liability of a carrier to $500 per package unless the shipper declares on the bill of lading the value of the goods and

pays additional freight.[1] The issue presented is whether the container in which the shipper's goods are shipped is the COGSA package, such that the carrier's liability is limited to $500 total, or whether each of 150 items packed in the container are COGSA packages for the purpose of the $500 limitation. The parties have submitted to the Court informal memoranda of law on the issue.

A brief review of the general legal principles in this area is necessary before turning to the specific facts of this case. The meaning of the word "package", which has remained undefined by Congress since COGSA was enacted in 1936, has troubled the courts for many years, especially as new methods of shipping goods have been developed. *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006, 1011–12 (2d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). One of these new methods is the practice of placing cargo in large metal shipping containers, which the Second Circuit has described as "functionally part of the ship." *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 815 (2d Cir.1971).

■■■■ The Second Circuit has made clear that "when a bill of lading discloses not only the number of containers but the number of cartons within them, the cartons, not the containers, will be treated as COGSA packages." *Binladen,* 759 F.2d at 1013, citing *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807, 821 (2d Cir.1981). *See also Leather's Best,* 451

F.2d at 815–16; *Allied International American Eagle Trading Corp. v. S.S. Yang Ming,* 672 F.2d 1055 (2d Cir.1982). On the other hand, "if the bill of lading lists the container as a package and fails to describe objects that can reasonably be understood from the description as being packages, the container must be deemed a COGSA package." *Binladen,* 759 F.2d at 1013. Thus, under the current interpretation of the statute, a shipper who wishes to protect itself may do so "by stating in plain terms on the bill of lading the number of COGSA packages being shipped." *Binladen,* 759 F.2d at 1016.

With that background, we may turn to the facts of the present case. This action is brought by St. Paul Fire & Marine Insurance Company as subrogee of Concept Cargo, Inc. ("Concept" or "plaintiff") for damages arising out of a shipment by vessel from Florida to the Dominican Republic. Concept is a non-vessel operating common carrier (NVOCC). As is customary for NVOCCs, Concept issued ocean bills of lading for various customers and then consolidated the cargo in one container belonging to the carrier, in this case Sea–Land Service, Inc. ("Sea–Land"). After the cargo had been consolidated, Concept delivered the container to Sea–Land, which in turn issued its own bill of lading, dated December 21, 1986, for the entire shipment.

The particulars of the cargo, as provided by Concept, are described on the face of the Sea–Land bill of lading as follows:

1. Section 4(5) provides:
   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. . . .
   By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in

   this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. . . .
   This must be read in conjunction with § 3(8), 46 U.S.C.A.App. § 1303(8), which reads:
   Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect. . . .

| MKS & NOS/<br>CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES<br>AND GOODS |
|---|---|---|
| CONTAINER NO:<br>SEAU–465911–3<br>SEAL NO:<br>0000613 | 1 | 40 FT CONT. NO: SEAU 465911–3,<br>SEAL NO: 0000613, S.T.C. 150 PKGS:<br>F.A.K. |

---

S.T.C. commonly means "said to contain" and F.A.K. commonly means "Freight All Kinds."

The container was duly shipped from Port Everglades, Florida to Santo Domingo, Dominican Republic on the vessel Vermillion Bay. Upon delivery by Sea–Land at the port, the container seal was missing and, when the customs agent opened the container, it was observed that certain cargo had been stolen. Concept's insurer paid the claims of Concept's consignees and subsequently brought this action as subrogee of Concept against Sea–Land to recover those amounts it had paid on Concept's behalf.

■ On these facts, there would be little doubt that Sea–Land's liability would be $500 for each of the 150 packages, rather than $500 total for the container. Concept took the step the courts have required in order to be protected from the severe limitation of recovery that would result if the container were considered the COGSA package: it stated in plain terms on the face of the bill of lading the number of packages in the container, thereby notifying Sea–Land of its potential liability. *See, e.g., Mitsui*, 636 F.2d at 821.

The fact that "1" appears in the column designated "Number of Pkgs" does not alter this conclusion as defendant argues. While this designation is important, *see Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft*, 375 F.2d 943 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967); *Nichimen Co. v. M.V. Farland*, 462 F.2d 319 (2d Cir.1972), in this case it carries little weight since from the face of the document it is clear that the column lists the number of containers, the contents of which are described in the next column as "150 pkgs F.A.K." To rule otherwise

would place undue emphasis on a technical aspect of the document at the expense of the clear import of the document as a whole. Furthermore, courts that have considered similar bills of lading have not regarded the "No. of Pkgs" column to be dispositive where, as here, the adjacent column describes the contents of the container. In *Binladen*, for example, the number of packages was listed as "1", which in actuality indicated the number of containers, but the court did not rely on that designation in its ruling that the container was the COGSA package. The court held that the container was a COGSA package because it "list[ed] the container as a package *and* fail[ed] to describe objects that can reasonably be understood from the description as being packages." 759 F.2d at 1015 (emphasis added). Accordingly, the designation of the container as a package alone is insufficient.

■ Sea–Land has made the resolution of this case more difficult, however, by including in the boilerplate language on the reverse side of its bill of lading a purported definition of the word "package." The reverse side of the bill of lading contains 22 numbered paragraphs setting forth various terms of the contract between the parties, including the following:

17. **VALUATION.** In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package ... the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of goods have been declared by the shipper herein and extra charges paid as provided in Carrier's tariff.... *The word "package" shall include a container used to ship household goods or Freight All Kinds*

*shipped under lump sum tariff....* (emphasis added)

Defendant contends that this definition is binding on Concept and limits its liability in this case to $500 for the container. Plaintiff argues that the provision is invalid because it contravenes the provisions of COGSA. The issue to be decided, then, is whether a NVOCC who has complied with the requirement of describing the contents of the container such that under the Second Circuit's interpretation of COGSA the container is not a package, is bound by a provision in the bill of lading that defines "package" differently.

In *Leather's Best, Inc. v. S.S. Mormaclynx, supra,* the court dealt with a very similar situation. The bill of lading described the "number and kind of packages; description of goods" as "1 container s.t.c. 99 bales of leather". Language in capital letters in the lower left hand corner of the bill of lading stated that "SHIPPER HEREBY AGREES THAT CARRIER'S LIABILITY IS LIMITED TO $500 WITH RESPECT TO THE ENTIRE CONTENTS OF EACH CONTAINER EXCEPT WHEN SHIPPER DECLARES A HIGHER VALUATION...." 451 F.2d at 804. Despite this provision on the face of the bill of lading, the Second Circuit stated

> we cannot escape the belief that the purpose of § 4(5) of COGSA was to set a reasonable figure below which the carrier should not be permitted to limit his liability and that "package" is thus more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally a part of the ship, in which the

carrier caused them to be "contained." [footnote omitted] We therefore hold that, under the circumstances of this case, the legend in the lower-left hand corner of the bill of lading was an invalid limitation of liability under COGSA.[2]

Similarly, in *Gulf Italia Co. v. The Exiria,* 160 F.Supp. 956 (S.D.N.Y.1958), *aff'd,* 263 F.2d 135 (2d Cir.), *cert. denied,* 360 U.S. 902, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959), the court held "[t]o allow the parties themselves to define what a 'package' is would allow a lessening of liability other than by terms of the Act since a carrier could always limit its liability to $500 by merely extracting a stipulation from the shipper that everything shipped, in no matter what form, would be deemed for the purposes of limitation of liability a 'package'." Judge Cashin's concerns in *Gulf Italia* are apt in this case.[3]

Allowing the carrier, in this case Sea–Land, to insert an essentially unbargained-for[4] definition of "package" in the bill of lading would effectively eliminate the protection COGSA was meant to afford shippers. As described above, the Second Circuit on a number of occasions has consistently held that a container is not a COGSA package when the carrier has been put on notice of the contents of the container. There is little sense in saying that carriers can sidestep these rulings by adding boilerplate language to their bills of lading to the effect that containers are always packages, regardless of what the shipper puts on the front of the bill of lading. Quickly, all bills of lading would include such language, and

**2.** While the court in *Leather's Best* did place some emphasis on the fact that an agent of the carrier rather than the shipper had placed the goods in the container, that distinction does not render the conclusion in *Leather's Best* inapplicable here. The scope of the $500 limitation does not turn upon whether the shipper or the carrier loaded the goods into the container, but rather, as the Second Circuit has ruled, on whether the carrier has been put on notice of the contents of the container. *Mitsui.* In the present case Concept Cargo loaded the goods into the container (owned by Sea–Land), but it notified Sea–Land of the contents of the container.

**3.** *See also Pannell v. U.S. Lines,* 263 F.2d 497, 498 (2d Cir.), *cert. denied,* 359 U.S. 1013, 79 S.Ct.

1151, 3 L.Ed.2d 1037 (1959) ("if [COGSA] applied *ex proprio vigore* the yacht, like the tractor in the Gulf Italia case, could not be deemed a 'package,' and the parties by so describing it could not reduce the carrier's liability.").

**4.** Ocean bills of lading are considered contracts of adhesion. *Mitsui,* 636 F.2d at 822–23. Sea–Land distinguishes *Mitsui* on the ground that it involved a carrier/shipper situation, in which the carrier has superior bargaining power, whereas an NVOCC such as Concept is a sophisticated carrier with bargaining power equal to that of the actual carrier. The Court finds, however, that a uniform approach to bills of lading is more important than the distinction Sea–Land urges the Court to make.

no carrier would ever be subject to more than $500 of liability for each container it takes on board, no matter whether the containers contain "packages" within the meaning of COGSA, as interpreted by the courts, or not.

It is true that a rule such as the one Sea–Land seeks here would have the virtue of certainty. However, it is inappropriate to emasculate the statute for the sake of certainty alone. It is the duty of the courts to interpret statutes so as to give effect to Congress' intention. *See Mitsui*, 636 F.2d at 815. Section 4(5) of COGSA has dual purposes: to limit liability, but to "make[ ] null and void any agreement reducing the carrier's liability below that level." *Id.*, 636 F.2d at 814; *see also Allied*, 672 F.2d at 1058. As the Second Circuit reminded in *Mitsui*, "courts must therefore take a critical look at any proposed construction of that section that would reduce a carrier's liability below reasonable limits." 636 F.2d at 815. To allow carriers to define "package" as Sea–Land has done here would allow them to effectively substitute the word "container" for the word "package" in COGSA, a development which the Second Circuit has decided Congress did not intend.

Sea–Land argues that language in recent Second Circuit opinions indicates that the Court of Appeals no longer adheres to the view espoused in *Leather's Best* and *Gulf Italia*. For example, defendant points to the court's statement in *Binladen* that "nothing prevents the parties from agreeing in their contract (the bill of lading) that each container shall constitute a package." 759 F.2d at 1015. Aside from the fact that this statement is dictum, since the parties in that case did not so agree, when read in context it appears that the court meant only to suggest that the failure to describe as "packages" the contents of the container on the face of the bill of lading mandates a conclusion that the parties expressly or implicitly agreed that the container itself would be the COGSA package. Since

Concept in this case specified the number of packages inside the container, the opposite conclusion—*i.e.*, that the parties understood there were 150 packages—is equally warranted.

Similarly, defendant cites *Allied International American Eagle Trading Corp. v. S.S. Yang Ming*, 672 F.2d at 1061, in which the court stated

the bill of lading expresses a contractual relationship, in which the intent of the parties is the overarching standard.... [W]hen the bill of lading expressly refers to the container as one package, or when the parties fail to specify an alternative measure of the 'packages' shipped, the Courts have no choice but to respect their express or implied understanding and to treat the container as a single package.

Again, however, the court in *Allied* was not presented with a situation where the carrier had inserted a purported definition of "package" into the boilerplate of the bill of lading. Moreover, *Allied* involved pallets, not containers, and the court indicated that containers present different considerations than pallets. *Id.*, 672 F.2d at 1061. Furthermore, the court reiterated the general rule established in *Leather's Best* and nowhere questioned or discussed the *Leather's Best* holding that the boilerplate language deeming the container the COGSA "package" was invalid under COGSA.

Finally, the defendant argues that COGSA does not apply *ex proprio vigore* to this case, and that the specific provision of paragraph 17 must prevail over the general incorporation of COGSA into the bill of lading for periods not covered by the statute. Defendant's argument is based upon its conclusion that the theft of the Concept cargo took place after discharge of the cargo in the Dominican Republic, when COGSA no longer applied of its own force.[5] Plaintiff does not indicate in its papers whether it disputes defendant's version of the facts, but instead appears to believe that it is uncontested that COGSA applies

---

**5.** The reverse side of the Sea–Land bill of lading includes a "Clause Paramount" which incorporates the provisions of COGSA into the bill of lading. The clause provides, *inter alia*, that the

provisions of COGSA "shall apply ... to carriage of goods between U.S. ports or between non-U.S. ports before the goods are loaded on and after they are discharged from the vessel...."

**134**

*ex proprio vigore* to this case. Since determination of a genuine dispute of material fact, by the Court would be inappropriate, the Court will not reach this issue.

Accordingly, the Court holds that the provision on the reverse side of the Sea–Land bill of lading is invalid under COGSA and does not relieve Sea–Land of the liability it would otherwise have under COGSA.

SO ORDERED.