SMITH ET AL., CO-PARTNERS, TRADING AS H. J. BAKER & BRO. *v.* THE FERNCLIFF ET AL.

No. 548. Argued March 2, 1939.—Decided March 27, 1939.

*Mr. Charles R. Hickox,* with whom *Mr. George W. Whip* was on the brief, for Smith et al.

*Messrs. George Whitefield Betts, Jr.* and *George Forbes,* with whom *Mr. Henry L. Wortche* was on the brief, for The Ferncliff et al.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Circuit Court of Appeals, Fourth Circuit, has certified to us the following Statement of Facts and Questions (U. S. C. Title 28, § 346)—

"STATEMENT OF FACTS.

"This was a suit in admiralty to recover damages to shipments of fish meal made in March 1936 [on Motorship Ferncliff] from points in Japan to consignees in Norfolk, Va. and Baltimore, Md. under bills of lading containing the following provision:

" ' All claims for which the ship and or carrier may be liable shall be adjusted and settled on the value declared by the shipper or on the net invoice cost plus disbursements, whichever shall be the least. The carrier shall not be liable for any profit or consequential or special damages, and shall have the option of replacing any lost or damaged goods.'

"No lower rate was offered the shipper for the service rendered because of this provision; and no choice of rates with and without the valuation clause was afforded him. [The record shows that no value was declared by the shipper on the shipment in question.]

"The invoice cost of the fish meal was $32.50 per ton. The value of the damaged portion of the shipment upon arrival at the ports of destination was $25.00 per ton. The market value of undamaged fish meal at the ports of destination at the time of the arrival of the shipment was $36.00 per ton.

"The court below held the valuation clause valid and computed the damages on the basis of the difference between the invoice cost ($32.50 per ton) and the value of the damaged fish meal at the time and place of delivery ($25.00 per ton).

"Appellants, while not contending before us that the clause quoted is absolutely invalid, contend that in view of the decision in *Ansaldo San Giorgio* v. *Rheinstrom Bros. Co.*, 294 U. S. 494, its validity can be sustained only if it be construed as requiring that, in estimating damages, the percentage of loss on the damaged shipment be ascertained and applied to the invoice cost. Under this contention, the loss here would be determined, not by deducting the value upon arrival ($25.00 per ton) from the invoice cost ($32.50 per ton), but by ascertaining the proportion of the invoice cost ($32.50) corresponding to the proportion which the actual loss ($36.00−$25.00= $11.00) bears to sound value ($36.00), i. e. by taking $11/36$ of $32.50. It is pointed out that this is the method used in calculating the amount of loss under a valued marine insurance policy on cargo and also the method prescribed by rule 16 of the York-Antwerp rules for a general average adjustment. And it was stated at the bar of the court by counsel for appellant that the same method has been generally employed in estimating cargo damage since the decision in *Ansaldo San Giorgio* v. *Rheinstrom Bros. Co.*, *supra*. [At the time this statement of counsel was made it was challenged by opposing counsel and nothing appears in the record with regard thereto.]

"In the absence of the decision in the *Ansaldo San Giorgio* case, we should affirm the decision below on the authority of *Gulf, C. & S. F. Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31, 37; *Pennsylvania R. Co.* v. *Olivit Bros.*, 243 U. S. 574, 586; *Hart* v. *Pennsylvania R. Co.*, 112 U. S. 331; *The Californian*, 2 Cir., 82 F. 2d 283; *Duplan Silk Co.* v. *Lehigh Valley R. Co.*, 2 Cir., 223 F. 600; and *The Oneida*, 2 Cir., 128 F. 687. In view of that decision, however, we are divided and in doubt as to the validity of such a clause as is here involved and as to the method which should be employed in computing damages under it. Notwithstanding the passage of the Carriage of Goods by Sea Act of April 16, 1936, c. 229, § 4, 49 Stat. 1210, 46 U. S. C. 1304 (5), the question as to the correct method of computing damages under a valuation clause is deemed an important one, as to which an authoritative decision would seem desirable. We, therefore, respectfully certify to the Supreme Court of the United States the following questions of law as indispensable to a proper decision of this case:

"QUESTIONS.

"1. Is an invoice cost valuation clause, such as that here involved, inserted in a marine bill of lading without offering a choice of rates to a shipper, valid and binding upon the parties?

"2. If so, should damages to a shipment be ascertained, under such a valuation clause, by deducting the value of the damaged goods in their damaged condition at the time and place of delivery from the invoice cost valuation as fixed by such clause?

"3. Or, should the percentage of loss of the damaged goods, based on difference between sound value and damaged value, be ascertained and the percentage applied to the invoice value for the purpose of ascertaining the damage?"

*Ansaldo San Giorgio I* v. *Rheinstrom Bros. Co.*, 294 U. S. 494, considered and held invalid, because against sound public policy, the following limitation agreement in a maritime bill of lading: "In the event of claims for loss, damage or short delivery the same shall be adjusted on the basis of the invoice value of the entire shipment adding expenses necessarily incurred." The opinion did not adjudicate the validity or effect of a clause, such as the one now before us, where the parties adopted "an agreed value as a measure of recovery for loss or damage to goods not delivered by the carrier or damaged in transit," and it does not control the questions here involved.

The clause in question prescribes a measure of recovery rather than limits the amount which may be recovered when loss or damage occurs. For a long time, in the absence of a controlling statute, fraud or imposition, such provisions in bills of lading have been recognized as valid by this and other federal courts. Also by many—perhaps a majority—of the state courts. *Hart* v. *Pennsylvania Railroad Co.*, 112 U. S. 331, 337–340; *Phoenix Insurance Co.* v. *Erie & W. Transportation Co.*, 117 U. S. 312, 322; *Pennsylvania R. Co.* v. *Olivit Bros.*, 243 U. S. 574, 586; *Gulf, C. & S. F. Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31, 37; *The Ellerdale*, 10 F. 2d 53; *The Asuarca*, 13 F. 2d 222, 223; *The Merauke*, 31 F. 2d 974; *Kilthau* v. *International Mercantile Marine Co.*, 245 N. Y. 361, 365; 157 N. E. 267; *Coleman* v. *New York, N. H. & H. R. Co.*, 215 Mass. 45, 49; 102 N. E. 92; Shaffer & Co. v. Chicago, R. I. & P. Ry. Co., 21 I. C. C. 8; In the Matter of Bills of Lading, 52 I. C. C. 671, 710; Note, Lawyers' Reports Anno. 1918B, 720, where the pertinent cases are collected.

*Chicago, M. & St. P. Ry. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 98, 99–100, involved the following clause in a bill issued by the railway—"The amount of any loss or damage for which any carrier is liable shall be computed

on the basis of the value of the property at the place and time of shipment under this bill of lading, including freight charges, if paid." We said—

"Before the passage of this amendment [The Cummins Amendment, Act March 4, 1915, c. 176, 38 Stat. 1196] the Interstate Commerce Commission had upheld the clause in the bill of lading as in no way limiting the carriers' liability to less than the value of the goods but merely offering the most convenient way of finding the value. . . . We appreciate the convenience of the stipulation in the bill of lading and the arguments urged in its favor. We understand that it does not necessarily prevent a recovery of the full actual loss, and that if the price of wheat had gone down the carrier might have had to pay more under this contract than by the common law rule. But the question is how the contract operates upon this case."

The clause was declared inoperative because forbidden by the Cummins Amendment, which did not extend to ocean carriers. *Union Pacific R. Co.* v. *Burke,* 255 U. S. 317, 322.

The District Court upheld and applied the agreement, and supported its views by a careful opinion—(22 F. Supp. 728, 742–744). It said—

"The clause we are here dealing with does not appear to operate in that way [i. e., 'to relieve the carrier from the consequences of its negligence']. . . . The clause is gratified by determining the amount of the whole tonnage damaged, and multiplying by the damage per ton. . . . In operation the clause only eliminates prospective profit, and limits the damage to the owner's actual loss in the transaction. It may even operate to his advantage if the market value at destination is less than the invoice value. In my opinion the clause is therefore different in its operation and effect from that condemned in the Ansaldo case. [294 U. S. 494.]

"In the Ansaldo Case two general types of valuation clauses were considered, one described as a 'true limitation agreement' and the other as a 'true valuation clause.' The one involved in this case would seem to fall in the latter category. . . . I take the view·after reading the cases specially cited in the opinion and other consideration of the subject, that the clause as here worded is not against public policy and should be given effect. . . . The general rule of our law is freedom of contract, subject only to statute and considerations of the public interest. Where a contract stipulation is not clearly opposed to public policy it should be upheld, as it is the agreement of the parties. The particular question is not likely to again arise as the subject is now regulated by the Carriage of Goods by Sea Act, § 4 (5), 46 U. S. C. A. § 1304 (5).

"Assuming the validity of the bill of lading clause that claims against the carrier shall be adjusted and settled on the net invoice cost plus disbursements . . . it is now contended that the proper method of calculation is to first determine what was the percentage of damage or loss, and then apply this percentage to the invoice value.

"Counsel for the libelants. point out that this is the method of calculating the amount of loss under a *valued marine insurance policy on cargo*. . . . It is frankly admitted by counsel that this method of calculating damages has never heretofore been applied by any court in a case dealing with a clause submitting [*sic*] invoice value for market value. On the contrary it is my understanding that the calculation as made in the opinion, which was to deduct from the invoice value (which in this case in-

cluded freight and other expenses) the damaged value has been uniformly applied."

We think the District Court reached the correct conclusion in respect of the mooted clause upon adequate authority and reasoning.

To the first certified question, we reply, *Yes* where there has been no fraud or imposition; to the second the answer is, *Yes;* to the third, *No.*