**PAN-AM TRADE & CREDIT CORPORATION et al. v. THE CAMPFIRE et al.**

District Court, S. D. New York.

Dec. 13, 1945.

Hill, Rivkins & Middleton, of New York City (Arthur O. Louis, Robert E. Hill, and Gregory S. Rivkins, all of New York City, of counsel), for libelants.

Gay & Behrens, of New York City (Russell C. Gay and Edward J Behrens, both of New York City, of counsel), for respondents.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), in support of libelant's exceptions to respondents' answer amicus curiae.

Kirlin, Campbell, Hickox & Keating, of New York City (L. deGrove Potter and Andree Carroll, both of New York City, of counsel), in opposition to libelants' exceptions to the answer, amicus curiae.

LEIBELL, District Judge.

The judicial determination of this suit in admiralty presents the question, whether a provision of a bill of lading which limits the liability of the carrier for a partial loss to a pro rata part of the statutory limit of $500.00 per package, is invalid as in violation of § 4, subdiv. (5), of the Carriage of Goods by Sea Act. 46 U.S.C.A. § 1304(5).

The libel herein was filed in the name of Pan-Am Trade & Credit Corporation and Saman Hnos, alleged to be the shippers, consignee and owners of two cases of rayon piece goods shipped from New York on July 8, 1943 on the S. S. Campfire to be carried to the port of Guayaquil, Ecuador. One of the two cases comprising the shipment (Case No. 416) contained 1556¾ yards of rayon piece goods in 26 pieces of a value of $1,619.47, when shipped; but on discharge at the port of destination the case was short 9 pieces containing 650¾ yards of a value of $676.94.

Clause 17 of the Bill of Lading issued to the shipper provided:

"17. In case of any loss or damage to or in connection with goods exceeding in actual value $500 lawful money of the United States, per package, or, in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per unit, on which basis the freight is adjusted and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 shall have been declared in writing by the shipper upon delivery to the Carrier and inserted in this bill of lading and extra

freight paid if required and in such case if the actual value of the goods per package . or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

"Whenever the value of the goods is less than $500 per package or other freight unit, their value in the calculation and adjustment of claims for which the Carrier may be liable shall for the purpose of avoiding uncertainties and difficulties in fixing value be deemed to be the invoice value, plus freight and insurance if paid, irrespective of whether any other value is greater or less."

When the two cases of rayon piece goods were delivered to the carrier, the shipper did not declare a valuation higher than $500 per case, provision for which was contained in clause 17 of the bill of lading. If the actual value of the contents of the case ($1,619.47) had been inserted in the bill of lading the shipper would have had to pay additional freight of $40.17 at the ad valorem rate of 2½% under the applicable tariff schedules; and the liability of the carrier would have been for the full amount of the loss, $676.94.

Subdivision (5) of § 4 of the United States Carriage of Goods by Sea Act (enacted in April 1936) provides:

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained."

The answer filed by the carrier to the libel in this suit set forth clause 17 of the bill of lading as an affirmative defense, averring that no higher valuation than $500 was declared by the shipper. Libelants excepted to the special defense on the ground that clause 17 of the bill of lading was illegal and void. At the hearing · on the motion to sustain the exceptions the parties stipulated to certain facts for the purpose of obtaining a final determination of the issues thus presented, and they have agreed "that if the libelants' position is sustained on the hearing of the said exceptions, a final decree may be entered herein in favor of the libelants for $500.00, with interest and costs, and that if the respondents' position is sustained, a final decree may be entered herein in favor of the libelants for $209.00 with interest and costs."

The libelants contend that under the above quoted provisions of the Act the carrier could not lessen its $500 per package liability by including in the bill of lading a provision, such as clause 17, for pro rating in case of partial loss or damage; that under § 3(8) of the Act, 46 U.S.C.A. § 1303(8), said clause 17 of the bill of lading is "null and void and of no effect"; and that libelants are entitled to collect the full $500. The respondent carrier's position seems to be that the statutory limitation of $500 applies only to claims based upon a total loss of the package, and that the statutory limitation does not prohibit pro rating where the claim is for a partial loss and the nature of the goods and. a higher valuation than $500 has not been declared and extra freight paid. Respondent also argues that clause 17 of the bill of lading is not a limitation of liability clause but a true valuation clause and that the latter type clause is legal. Applying the pro rata formula of clause 17, the carrier argues that the amount of plaintiff's recovery should be 41.8% of the $500 limit, or $209.

Although bills of lading covering the shipment of merchandise in foreign commerce from ports in the United States have contained for eight years pro rating clauses substantially the same as clause 17 above quoted, there has been no judicial determination of the validity of the pro rating clause under the Carriage of Goods by Sea Act. The clause has been chal-

lenged at times, according to counsel, but the cases in which the issue arose were settled, except a few now pending and undetermined.

The bill of lading in clause 1 states that it "shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America" and that "the provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern * * *". The paragraph preceding § 1 of the Act, 46 U.S.C.A. § 1300, provides that "Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter * * *." § 13 of the Act, 46 U.S.C.A. § 1312, contains a similar provision. § 5 of the Act, 46 U.S.C.A. § 1305, specifically provides that the carrier may "surrender in whole or in part all or any of his rights and immunities" or "increase any of his responsibilities and liabilities under this chapter", but the surrender or increase must be embodied in the bill of lading. Under § 6, 46 U.S.C.A. § 1306, a special agreement as to particular goods (but not as to ordinary commercial shipments) may be entered into between the carrier and a shipper, notwithstanding the provisions of §§ 3 to 5 of the Act. However, in any such case no bill of lading may be issued and the special agreement shall be expressed in a "nonnegotiable document and shall be marked as such." By § 9, 46 U.S.C.A. § 1309, a common carrier by water is prohibited from discriminating "between competing shippers similarly placed in time and circumstances."

There is no provision in subd. (5) of § 4, or elsewhere in the Act, which specifies or recognizes any procedure by which a carrier may, in a bill of lading, reduce the maximum liability of $500 per package "for any loss or damage to or in connection with the transportation of goods", where the actual loss is greater than $500. Although under § 5 the carrier and shipper may agree upon another maximum amount, it "shall not be less than the figure above named", i. e. $500. The prohibition could hardly be more specific in its language. A carrier is not permitted to provide in his bill of lading that his maximum liability for any loss or damage to the merchandise shall be $300 per package, instead of the $500 provided by the Act;

or that his maximum liability shall be $500 in case of a total loss, but only $300 in the case of a partial loss. If the carrier may not do that directly, should he be permitted in the case of a partial loss to reduce his maximum liability below $500 through the use of a pro rating clause or any other formula? I believe that any such provision in the bill of lading is invalid under the Act.

The statutory maximum of liability for damage, $500 per package, is not limited to claims for total loss or damage; it applies to a partial loss as well. If the Congress had wished to permit the pro rating of a partial loss it could have done so in a paragraph, in the manner provided in clause 17 of the bill of lading. If the Congress intended that the $500 maximum liability limitation should apply only to the case of a total loss, it could have said so in a sentence. The Congress must have intended that partial losses, as well as total losses, should be covered by subdivision (5) of § 4 of the Act. A large percentage of shipper's claims for loss or damage are claims where the contents of the package have not been totally lost or damaged. There would be no good reason for excluding claims for partial loss or damage from the provisions of subdivision (5) of § 4. In fact the statute would be defective as a piece of legislation, if it failed to include within its scope claims for partial loss or damage.

In The Steel Inventor, D.C.,1940, 35 F. Supp. 986, 998, Judge Chesnut discussed a provision of a bill of lading which among other things attempted to limit the "value" of loss or damaged merchandise to "the invoice cost", instead of the usual "market value at the time and place of delivery." Referring to the United States Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., he stated at page 998: "In the latter, section 1304(5) provides in the matter of valuation of cargo that (1) the carrier shall not be liable in an amount exceeding $500 per package unless the value is inserted in the bill of lading; (2) that by agreement between the carrier and the shipper a greater maximum, but not a smaller, may be fixed; and (3) in no event shall the carrier be liable for more than the amount of damages actually sustained. The carrier may increase but not decrease the extent of its liability, 46 U.S.C.A. § 1305. These provisions constitute 'limitations of liability' rather than a 'measure

of liability' which is more particularly the function of· a true valuation clause. See Shackman v. Cunard White Star, D.C., 31 F.Supp. 948."

Construing the bill of lading provision as a "limitation of liability clause," and not a "true valuation clause", he held it "necessarily repugnant to . the United States Act", and that § 4, subd. (5) of the Act "expressly prohibits the carrier from contracting for a limitation of liability in an amount less than $500 per package, * * *."

The Circuit Court of Appeals, Second Circuit, has also referred to this $500 per package provision of the Act as a "$500.00 limitation". Stirnimann v. S. S. San Diego, 148 F.2d 141. The difference between the two types of clauses is discussed in The Ansaldo, etc., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 and The Ferncliff, 306 U.S. 444, 59 S.Ct. 615, 83 L.Ed. 862.

In the case of The Bill, D.C., 55 F. Supp. 780 at page 782, decided June 1944, Judge Chesnut briefly summarized the history of the Act as follows: "The history of the U. S. Carriage of Goods by Sea Act of 1936 is a very interesting one in the field of admiralty law. It was finally passed by Congress to promote uniformity in ocean bills of lading. For many years prior thereto efforts had been made in this and other countries to achieve such uniformity. The history of this can be found in Knauth on Ocean Bills of Lading (1937) 99–110. In 1924 certain rules (the Hague rules) were adopted by an international convention for the unification of certain rules relating to 'Ocean Bills of Lading.' In them (Art. 4, s. 5) the parallel limitation of liability clause read: 'In an amount exceeding 100 pounds sterling per *package or unit*.' These Hague rules have subsequently been adopted in a number of other countries including Great Britain (1925) and the United States (1936). The phraseology of the British statute followed. the Hague rules with respect to the wording of the limitation clause. But it will be noted that in the United States Act the phrase 'per unit' has been expanded or changed to read 'per customary freight unit.' There was considerable delay (1923–1936) before this country passed its Act. In the intervening years several successive Bills were introduced in which the phraseology of the limitation clause at times read '$100 per package or unit'; '$500 per package or unit'; '$500 per package or, in case of goods not shipped in packages, per customary freight unit.' Various hearings were held on these several Bills over this period of years. During these hearings, or some of them, other varying phraseology was suggested from time to time by interested parties including among other phrases 'per declared freight unit.' The final Bill which was subsequently passed was introduced on January 17, 1935 in the Senate (S. 1152) containing the phraseology '$500 per package, lawful money of the United States, or in case of goods not shipped in packages, *per customary freight unit*.' (Italics supplied.) There appear to be no committee reports which clearly explain the quoted phrase 'per customary freight unit'; but it seems reasonably clear that the phraseology finally adopted was intended to be more definite than the shorter phrase 'per unit' contained in the Hague rules."

The proper construction of § 4(5) of the Act, in a case of partial loss, is to permit recovery for the loss or damage actually sustained, the amount recoverable, however, not to be greater than the statutory limit of $500. The reasoning employed in an analogous situation in Chenango Textile Corp. v. Willock, May 1936, 247 App.Div. 638, 288 N.Y.S. 270 supports this conclusion.

In 1924 the final form of the Hague Rules was agreed upon and embodied in the "Brussels Convention". On February 26, 1927 the Convention was submitted to the United States Senate. The Convention remained with the Committee on Foreign Relations for a number of years. Finally, in March 1935 it was reported favorably and the Senate gave its advice and consent April 1, 1935. Senate Bill No. 1152 was the subject of hearings in 1935 and 1936. It was finally passed as The Carriage of Goods by Sea Act. The President approved it April 16, 1936 and it took effect ninety days thereafter. § 15 of the Act, 46 U.S.C.A. § 1314. In the years between the Brussels Convention and the United States Carriage of Goods by Sea Act, other nations had taken legislative action for the purpose of establishing world-wide uniformity in bills of lading for the carriage of goods by sea. The Report of the House Committee on Merchant Marine and Fisheries (Report No. 2218, 74th Congress 2nd Session, dated March 23, 1936) contains a full explanation of the Hague Rules and the Brussels Convention, and of the purposes and ben-

efits thereof namely, "simplification and uniformity of bills of lading, removal of onerous provisions, * * * and denial to the carrier of power to exempt itself from various classes of liability by riders and exempting clauses." The Report (No. 2218) stated: "The purpose of this bill (the Carriage of Goods by Sea Act) is to define by law the rights and liability of water carriers and shippers in foreign commerce. It fixes the irreducible minimum of immunity of the carrier from liability."

Scrutton in his work on Charter Parties and Bills of Lading, 13th Ed., pp. 498 and 499, discusses the condition that created the need for this legislation.

In Gosse Millard v. Canadian Govt. Merchant Marine Ltd. [1927], 2 K.B. 432 at p. 434, Wright, J. stated: "These Rules, which now have statutory force, have radically changed the legal status of sea carriers under bills of lading. According to the previous law, shipowners were generally common carriers, or were liable to the obligations of common carriers, but they were entitled to the utmost freedom to restrict and limit their liabilities, which they did by elaborate and mostly illegible exceptions and conditions. Under the Act and the Rules, which cannot be varied in favour of the carrier by any bill of lading, their liabilities are precisely determined, and so also are their rights and immunities."

When the Hague Rules were the subject of a hearing before the United States Shipping Board on September 20 and 21, 1922, a number of the leading members of the Admiralty Bar expressed the view that under the £100 liability limitation there was "no pro rating". At the hearing before the Senate Committee on Commerce on May 10, 1935, reference was made to some of the beneficial provisions of the Hague Rules and to the fact that "no pro rating clause is contained in the Hague Rules, and the carrier must pay up to £100 per package and not a proportionate amount of the actual value". The United States Carriage of Goods by Sea Act followed closely the language of the Hague Rules as to the maximum limitation per package.

 It is urged by the respondents that a pro rating clause in a bill of lading has been used by American carriers since September 1, 1937; that during the Second World War, recently concluded, the United States War Shipping Administration approved and used a uniform bill of lading which contained a pro rating clause; that this would indicate a practical construction of the Act which this Court should follow. Although a pro rating clause was incorporated in a uniform bill of lading in 1937 after the passage of the Act, the clause was not inserted at the request of the shippers. It was inserted by the carriers who prepared the bill of lading and it was in their interest to use it. The War Shipping Commission was a carrier, almost the sole American carrier during the war, and it too acted in its own interest in adopting the pro rating principle in the event of a partial loss. Clause 17 of the bill of lading is a limitation of liability clause, not a valuation clause. See § 4(5) of the Act, and S. S. Ansaldo San Giorgio I v. Rheinstrom Bros., Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016. Since the Act declares "null and void and of no effect" any agreement "lessening" the liability of the carrier under the Act, clause 17 is clearly opposed to public policy and should be condemned. Freedom of contract is subject to the statute and to considerations of the public interest. The uniformity sought under the Hague Rules is destroyed if on shipments originating in the United States to be transported abroad a bill of lading with a pro rating clause is used (even by foreign steamship companies), but on shipments from foreign ports to the United States the bill of lading issued does not contain a pro rating clause. That is what the various bills of lading, called to my attention by counsel, indicate is the practice now prevailing. American shippers are thus discriminated against.

For the reasons hereinabove stated, my decision is as follows: The libelants' exceptions to the special defense pleaded in respondents' answers are sustained; clause 17 of the bill of lading is declared illegal, null and void; libelants are entitled to a final decree sustaining the libel and awarding them a judgment against the respondents for $500, with interest from August 20, 1943, and costs.