**Affirmed and Opinion filed May 7, 2024.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-23-00300-CV

### SJ MEDICAL CENTER, LLC D/B/A ST. JOSEPH MEDICAL CENTER, Appellant

### V.

### OLANMA DESTINY ANOZIE, Appellee

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2023-04872**

## O P I N I O N

Olanma Destiny Anozie sued her former employer for retaliation, claiming she was terminated for reporting that a mental health patient sexually assaulted her. Her employer, St. Joseph Medical Center, moved to compel arbitration, which the trial court denied. The dispositive issue in St. Joseph's appeal is whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the

"Act")[1] invalidates the arbitration agreement between St. Joseph and Anozie with respect to this case. We conclude that it does, and we affirm the trial court's order.

## Background

Anozie worked at St. Joseph's Center for Behavioral Health as a registered nurse. In December 2022, a mental health patient allegedly assaulted her by slapping her "buttock area" and yelled racial slurs at her. Anozie reported the incident to her manager. A week later, St. Joseph terminated Anozie's employment.[2] Anozie sued St. Joseph for retaliation, alleging that she was wrongfully terminated because she reported a violation of law. *See* Tex. Health & Safety Code § 161.134.

St. Joseph moved to compel arbitration. St. Joseph proffered an arbitration agreement signed by Anozie in June 2021, in which she agreed to arbitrate all claims or controversies that otherwise would be resolved in a court of law or before a forum other than arbitration, including claims or disputes arising out of or related to termination of employment. Anozie opposed arbitration based on the Act, which declares that, at the option of a person alleging conduct constituting a sexual assault dispute or sexual harassment dispute, predispute arbitration agreements are unenforceable as to certain cases that relate to the alleged sexual assault dispute or sexual harassment dispute. *See* 9 U.S.C. § 402(a). The trial court denied St. Joseph's motion to compel, and St. Joseph timely filed this appeal.

---

[1] *See* Pub. L. No. 117-90, 136 Stat. 26, 28 (2022) (codified at 9 U.S.C. §§ 401-02).

[2] According to St. Joseph, its investigation determined that Anozie inappropriately responded to the incident by punching the patient in the face and pushing him.

**Analysis**

### A. Standard of Review

We review interlocutory appeals of orders denying motions to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Whether an arbitration agreement is enforceable is subject to de novo review. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

### B. Relevant Arbitration Law

The arbitration agreement between St. Joseph and Anozie states that the Federal Arbitration Act ("FAA") governs any arbitration between the parties. *See* 9 U.S.C. §§ 1-402. A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims in dispute fall within that agreement's scope. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); 9 U.S.C. §§ 2, 4. Federal law requires the enforcement of valid agreements to arbitrate. 9 U.S.C. § 2. If the movant establishes that an arbitration agreement governs the dispute, the burden shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding); *see Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003). A party may defend against the enforceability of the agreement on a ground that exists at law or in equity for the revocation of a contract, or as otherwise provided in the Act. *See* 9 U.S.C. § 2.

A challenge like Anozie's to the validity of an arbitration agreement generally must be resolved by the court. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 177 L.Ed.2d 403 (2010). The parties may, however,

3

delegate these types of threshold arbitrability questions to an arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 139 S. Ct. 524, 202 L.Ed.2d 480 (2019); *Rent-A-Ctr.*, 561 U.S. at 69-70. The arbitration agreement at issue contains a delegation clause that unmistakably delegates to the arbitrator any questions or disputes concerning the validity or enforceability of the arbitration agreement. When presented with a standalone arbitration agreement such as the present one[3] that also delegates to the arbitrator questions of validity or enforceability of that agreement, a court may not ordinarily intervene in evaluating those questions unless the party opposing arbitration specifically challenges the delegation clause on legal or public policy grounds. *Rent-A-Ctr.*, 561 U.S. at 72.

In cases when the Act is invoked, however, courts, not arbitrators, must decide the validity or enforceability of an arbitration agreement under the Act regardless of any delegation clause or a party's challenge to it. 9 U.S.C. § 402(b).[4] Thus, Anozie's defense to arbitration is for the court to resolve. Our determination whether the Act applies to this dispute is controlled by federal law. 9 U.S.C. § 402(b).

## C. Application

There is no dispute that an arbitration agreement exists that encompasses Anozie's retaliation claim against St. Joseph. The only issue before us is whether

---

[3] The agreement is a "standalone" arbitration agreement in the sense that all of its material terms relate to its essential purpose of arbitration. *See Rent-A-Ctr.*, 561 U.S. at 69-70.

[4] "The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b).

the arbitration agreement is enforceable under the Act with respect to Anozie's suit.

Arbitration agreements exist on equal footing with all other contracts. *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54, 136 S. Ct. 463, 193 L.Ed.2d 365 (2015); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L.Ed.2d 1038 (2006). It is a longstanding principle of our republic that parties are free to contract as they see fit, "subject only to statute and considerations of the public interest." *Smith v. The Ferncliff*, 306 U.S. 444, 450, 59 S. Ct. 615, 83 L.Ed. 862 (1939). Statutory encroachments upon contractual freedom are rare, but the Act is one such instance where Congress has deemed it appropriate to carve out an exclusion from the otherwise broad scope of the FAA and proscribe arbitration agreements in a very specific area. The Act provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).[5] The Act is an amendment to the FAA and became effective on March 3, 2022.[6]

For the reasons discussed below, we hold that the Act applies and the arbitration agreement is unenforceable with respect to Anozie's case because Anozie alleged conduct constituting a sexual assault dispute and her case relates to the sexual assault dispute.

---

[5] The Act distinguishes between a "sexual assault dispute" and a "sexual harassment dispute." Anozie has alleged only the former and not the latter.

[6] *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022).

1. *Anozie alleged conduct constituting a "sexual assault dispute."*

As section 402(a) requires that the person seeking to avoid an arbitration agreement "alleg[e] conduct constituting a . . . sexual assault dispute," we first consider whether Anozie qualifies as such based on her petition. To do so, we must evaluate her allegations in light of the statutory text.

The starting point for statutory interpretation is the language of the statute itself. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 142 L.Ed.2d 881 (1999); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S. Ct. 2370, 57 L.Ed.2d 239 (1978). The Act defines "sexual assault dispute" to mean "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." 9 U.S.C. § 401(3). The relevant section of title 18 defines "sexual contact" to mean "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

All agree that Anozie has not asserted a cause of action for assault or sexual assault against St. Joseph. Her only pleaded cause of action is for retaliation under Health and Safety Code section 161.134, which prohibits a hospital's retaliation against an employee for reporting a violation of law. Tex. Health & Safety Code § 161.134.[7] Anozie says she reported a sexual assault by a patient and was

---

[7] "(a) A hospital, mental health facility, or treatment facility may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule of another agency." *Id.*

terminated in response. According to her petition, while working as a nurse at St. Joseph, Anozie walked past a patient who had been diagnosed with schizoaffective disorder, general anxiety disorder, depression, and cannabis abuse. The patient reached out and "slapped her buttock area." In response, Anozie attempted to move the patient away from her. She reported the incident to her manager. St. Joseph suspended Anozie pending an investigation and terminated her employment approximately one week later.

The initial interpretive question is whether her retaliation claim and supporting facts allege a dispute "involving" a "nonconsensual sexual act or sexual contact." Regarding "sexual contact," Anozie alleged that the patient intentionally slapped her "buttock area." Given the applicable definition of "sexual contact" under federal law, we construe Anozie's allegations, and the reasonable inferences flowing from them, as sufficient to allege that nonconsensual sexual contact occurred when the patient slapped her. *See* 18 U.S.C. § 2246(3) ("sexual contact" includes intentional touching through clothing of buttocks of any person with "intent to abuse, humiliate, harass, degrade . . ."). St. Joseph observes that Anozie's petition cites to the definition of "assault" in the Texas Penal Code,[8] and her allegations are inadequate to state a claim of assault—or sexual assault, for that matter—under the Penal Code. But according to the Act, a party may plead conduct constituting sexual contact under either federal or state law. 9 U.S.C. § 401(3). We conclude that Anozie sufficiently pleaded nonconsensual sexual contact under section 2246(3) regardless of whether she also sufficiently pleaded an assault under the Penal Code.

Having concluded that Anozie pleaded nonconsensual sexual contact, we next consider whether her retaliation claim is a dispute "involving" that sexual

---

[8] Tex. Penal Code § 22.01(a)(1).

7

contact. The word "involve" has a wide variety of definitions, including: (1) to "contain as a part", *see, e.g.*, Am. Heritage Dictionary 921 (4th ed. 2000); (2) to "have within or as part of itself", Webster's Third New Int'l Dictionary 1191 (1993); (3) to "require as a necessary accompaniment: entail", Merriam-Webster's Collegiate Dictionary 660 (11th ed. 2003); (4) to "include as a necessary circumstance, condition, or consequence", Random House Dictionary of the English Language 1005 (2d ed. 1987); and (5) "to include, contain, or comprehend within itself or its scope", Dictionary.com. Broader definitions are also found, such as (1) "to affect", *id.*; (2) "to relate closely", Webster's, *supra*, at 1191; or (3) to "connect closely", American Heritage, *supra*, at 921.

These dictionary definitions in isolation are not necessarily determinative of statutory meaning given the broad spectrum of "definitional possibilities." *See Dolan v. Postal Service*, 546 U.S. 481, 486, 126 S. Ct. 1252, 163 L.Ed.2d 1079 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities."). In these situations, "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.*; *see Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995).

The Act's structure together with the context of section 401(3) compel us to conclude that, of the many potential definitions of "involving", the broadest—such as "to relate" or "to affect"—were not intended. The first reason for this conclusion lies in a comparison with an immediately neighboring provision, section 401(4). When Congress includes particular language in one statutory provision, and excludes it in another, we generally assume that Congress did so intentionally. *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78

L.Ed.2d 17 (1983).   Applying this interpretive principle here, we note that Congress specifically used the phrase "relating to" in defining "sexual harassment dispute," 9 U.S.C. § 401(4), but chose to use "involving" in section 401(3)'s definition of "sexual assault dispute."[9]   The inclusion of "involving" in section 401(3)—coupled with its omission from the nearby definitional provision in section 401(4)—is a strong indication that Congress did not intend "involving" to mean the same thing as "relating to."   Therefore, when Congress defined a "sexual assault dispute" to mean a dispute *involving* a nonconsensual sexual act or sexual contact, it likely did not mean a dispute *relating to*, or *connected closely with*, a nonconsensual sexual act or sexual contact.

Second, the specific sentence of which "involving" is a part suggests a more circumscribed meaning.   The Supreme Court has had occasion to construe the word "involving" within the FAA's broader context.   *Allied-Bruce*, 513 U.S. at 273-74.   In that case the Court considered the significance of Congress's use of the phrase "involving commerce" in the FAA's coverage provision, section 2.   That section provides:

> A written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

---

[9] *Compare* 9 U.S.C. § 401(4) ("The term 'sexual harassment dispute' means a dispute *relating to* conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.") (emphasis added), *with* 9 U.S.C. § 401(3) ("'sexual assault dispute' means a dispute *involving* a nonconsensual sexual act or sexual contact . . .") (emphasis added).

Relying upon the FAA's background and purpose, and after considering section 2's language and structure in conjunction with relevant dictionary definitions, the Court held that the word "involving" is broad and is the functional equivalent of "affecting." *Allied-Bruce*, 513 U.S. at 273-74. This attribution of meaning aligned with Congress's use of "involving commerce" within the FAA's general coverage provision, which the Court has long described as reaching fully, and concurrently, with that of the Commerce Clause. *Id.* at 274 (citing *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L.Ed.2d 426 (1987)). "[A] narrower interpretation," the Court continued, "is not consistent with the [FAA's] purpose." *Id.* at 275.

The use of "*involving* commerce" within the FAA's coverage provision is to be contrasted with the use of "a dispute *involving* nonconsensual . . . sexual contact" within the Act's exclusion provision. The plain meaning of the word "involving" in section 401(3)'s phrase is simply narrower than its open-ended meaning in section 2, as construed in *Allied-Bruce*. That the Court interpreted "involving" broadly in relation to the FAA's coverage clause does not foreclose a different meaning for the word when used elsewhere in the statute in the context of an exclusion. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001) (construing FAA exclusion narrowly despite broad interpretation of comparable language in FAA's coverage provision). "[I]dentical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." *Yates v. United States*, 574 U.S. 528, 537, 135 S. Ct. 1074, 1082, 191 L.Ed.2d 64 (2015) (plurality opinion).[10]

---

[10] *See, e.g.*, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 313-14, 126 S. Ct. 941, 163 L.Ed.2d 797 (2006) ("located" has different meanings in different provisions of the National Bank Act); *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595-97, 124 S. Ct. 1236, 157 L.Ed.2d 1094 (2004) ("age" has different meanings in different provisions of the Age

In *Circuit City*, the Court examined another FAA exclusion provision. *Circuit City*, 532 U.S. at 114-15, 118-19. Section 1 of the FAA exempts contracts of employment of seamen, railroad employees, or any other class of workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. Despite the Court's broad reading of section 2's phrase "involving commerce" in *Allied-Bruce*, the Court determined that the "engaged in . . . commerce" language in section 1's exclusion required a narrow reading based on text and an interpretive canon. *Circuit City*, 532 U.S. at 114-15. Construing the "engaged in . . . commerce" language "with reference to the statutory context in which it is found" compelled a conclusion that "the § 1 exclusion provision be afforded a narrow construction." *Id.* at 118-19.

A similar analysis compels a similar result here. Given the Act's language, structure, and context—Congress's presumptively deliberate choice to use "involving" instead of "relating to" in defining "sexual assault dispute," coupled with the meaning of section 401(3) when read as a complete whole—we think a narrow interpretation of "involving" from among its "definitional possibilities" is more reflective of Congressional intent. We therefore interpret section 401(3)'s phrase "dispute involving a nonconsensual sexual act or sexual contact" to mean a claim for recovery that will necessarily include or entail proof that the plaintiff was a victim of a nonconsensual sexual act or sexual contact.

---

Discrimination in Employment Act of 1967); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213, 121 S. Ct. 1433, 149 L.Ed.2d 401 (2001) ("wages paid" has different meanings in different provisions of Title 26 U.S.C.); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342-44, 117 S. Ct. 843, 136 L.Ed.2d 808 (1997) ("employee" has different meanings in different sections of Title VII of the Civil Rights Act of 1964); *District of Columbia v. Carter*, 409 U.S. 418, 420-21, 93 S. Ct. 602, 34 L.Ed.2d 613 (1973) ("State or Territory" has different meanings in 42 U.S.C. § 1982 and § 1983); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433-37, 52 S. Ct. 607, 76 L.Ed. 1204 (1932) ("trade or commerce" has different meanings in different sections of the Sherman Act).

Construing the phrase "sexual assault dispute" as we have, we agree with Anozie that her claim is included within the Act's scope. For Anozie to recover on her retaliation claim as she has pleaded it, she must prove that she was terminated for reporting a sexual assault against her. Her retaliation claim can fairly be said to "involve" nonconsensual sexual contact because her claim includes as a part, or necessarily entails, proof that a sexual assault occurred and that she is a sexual assault victim, which St. Joseph disputes. This is true even though she has not pleaded separately a cause of action for assault or sexual assault against St. Joseph or asserted that St. Joseph is responsible for the patient's conduct. Congress has determined that victims of sexual harassment and sexual assault should have the option to invalidate arbitration agreements in certain cases. Having made this policy decision, it would be rational for Congress to include within the class of persons who may exercise that option sexual assault victims who are allegedly fired for reporting the assault to their employers. We conclude that Anozie has alleged conduct constituting a sexual assault dispute.[11] 9 U.S.C. § 401(3).

For its part, St. Joseph relies on a Louisiana federal case that held the Act did not apply to invalidate an arbitration agreement when the claimant, like Anozie, asserted a retaliation claim but failed to plead a plausible claim for sexual harassment or sexual assault. *Pepe v. N.Y. Life Ins. Co.*, Civ. A. Nos. 22-4005, 22-4012, 22-4015, 2023 WL 1814879 (E.D. La. Feb. 7, 2023). The plaintiff in that case sued his employer for retaliation after he was terminated. *Id.* at *1. He alleged that he was "electronically surveilled" and retaliated against for reporting workplace misconduct and violations of securities laws. *Id.* Unlike Anozie, however, Pepe did not allege that he was a victim of sexual assault, nor did he

---

[11] Having reached our conclusion based on the plain text of the Act, it is unnecessary to consider its legislative history. *See Circuit City*, 532 U.S. at 119-20.

12

challenge the arbitration agreement's validity under the Act. *Id.* at \*4 & n.19. *Pepe* does not support St. Joseph's argument.

St. Joseph also directs us to *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023), where the court held the Act did not apply, and an arbitration agreement was not invalidated, when the plaintiff had not plausibly pleaded a claim of sexual harassment or conduct violating a law prohibiting sexual harassment. *Id.* at 585. The court concluded that the plaintiff had not pleaded a claim of sexual harassment consistent with Federal Rule of Civil Procedure 12(b)(6) standards and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). The court dismissed the claimant's sexual harassment claims, determined that the Act had no further bearing on the case, and compelled the case to arbitration. *Yost*, 657 F. Supp. 3d at 588.

*Yost* is different from today's case in two critical respects. First, the claimant in *Yost* did not assert a claim for retaliation. *Id.* at 583 n.14. Once the court dismissed the claimant's sexual harassment claim as implausibly pleaded, there were no further allegations of conduct constituting a sexual harassment dispute under the Act. Second, unlike the claimant in *Yost*, Anozie has alleged conduct constituting a sexual assault dispute under federal law.

2. *Anozie's case relates to the sexual assault dispute*.

Under the Act, no predispute arbitration agreement is enforceable with respect to a case filed under state law and that relates to the alleged sexual assault dispute. *See* 9 U.S.C. § 402(a). We have determined that Anozie has alleged conduct constituting a sexual assault dispute. Given that her case involves only one claim for retaliation under Texas state law that is premised on the contention that she was terminated for reporting that she was a victim of a sexual assault, we

13

have no difficulty in concluding that her case relates to the sexual assault dispute alleged. *See* 9 U.S.C. § 402(a).

We overrule St. Joseph's issue on appeal.

**Conclusion**

We hold that Anozie has alleged conduct constituting a sexual assault dispute, and that her suit asserting a retaliation claim relates to the sexual assault dispute. Therefore, the Act applies. Because Anozie has elected to oppose arbitration under the Act, the arbitration agreement is not enforceable with respect to her case. We affirm the trial court's order.


/s/    Kevin Jewell
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.